*Exhibit A*



Select Language
Powered by Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | | |
|---|---|---|---|---|
| Case Number: | CV2021-010875 | | Judge: | Hannah, John |
| File Date: | 7/9/2021 | | Location: | Downtown |
| Case Type: | Civil | | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| William F Forrest | Plaintiff | Male | Nicholas Enoch |
| Wendy Smith | Plaintiff | Female | Nicholas Enoch |
| Michelle Martinez | Plaintiff | Female | Nicholas Enoch |
| Jodi Miller | Plaintiff | Female | Nicholas Enoch |
| Kenneth Turner | Plaintiff | Male | Nicholas Enoch |
| Keith Spizzirri | Defendant | Male | Pro Per |
| Miriam Spizzirri | Defendant | Female | Pro Per |
| Ken Maring | Defendant | Male | Pro Per |
| Cynthia Moore | Defendant | Female | Pro Per |
| John De La Cruz | Defendant | Male | Pro Per |
| Intelliquick Delivery Inc | Defendant | | Pro Per |
| Majik Leasing L L C | Defendant | | Pro Per |
| Majik Enterprises I Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 9/24/2021 | AFS - Affidavit Of Service | 9/29/2021 | |
| **NOTE:** JOHN DE LA CRUZ | | | |
| 9/15/2021 | WSS - Waiver Of Service Of Summons | 9/18/2021 | |
| **NOTE:** Waiver of Service | | | |
| 9/15/2021 | 322 - ME: Notice Of Intent To Dismiss | 9/15/2021 | |
| 7/14/2021 | NOF - Notice Of Filing | 7/19/2021 | |
| **NOTE:** Plaintiffs' Notice of Filing of Opt-Ins | | | |
| 7/14/2021 | NJT - Not Demand For Jury Trials | 7/19/2021 | |
| **NOTE:** PLAINTIFFS' Jury Demand | | | |
| 7/9/2021 | COM - Complaint | 7/9/2021 | |
| **NOTE:** Plaintiffs' Hybrid Collective and Class Action Complaint | | | |
| 7/9/2021 | CSH - Coversheet | 7/9/2021 | |
| **NOTE:** Civil Cover Sheet | | | |
| 7/9/2021 | CCN - Cert Arbitration - Not Subject | 7/9/2021 | |
| **NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |
| 7/9/2021 | SUM - Summons | 7/9/2021 | |
| **NOTE:** Summons | | | |

| 7/9/2021 | SUM - Summons | 7/9/2021 |
| | | |

**NOTE:** Summons

| 7/9/2021 | SUM - Summons | 7/9/2021 |
| | | |

**NOTE:** Summons

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

Clerk of the Superior Court
*** Electronically Filed ***
C. Cuellar, Deputy
7/9/2021 9:43:48 AM
Filing ID 13103731

LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Clara S. Acosta
State Bar No. 036044
William H. Holder
State Bar No. 009478
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com

Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| WILLIAM F. FORREST, a single man, WENDY SMITH, a single woman, MICHELLE MARTINEZ, a single woman, JODI MILLER, a married woman, and KENNETH TURNER, a married man,<br><br>        Plaintiffs,<br><br>v.<br><br>KEITH SPIZZIRRI, and MIRIAM SPIZZIRRI, husband and wife; KEN MARING and JANE DOE MARING, a married couple; CYNTHIA MOORE and JOHN DOE MOORE, a married couple; PAT DOE and JANE DOE I, husband and wife, JOHN DE LA CRUZ and JANE DOE DE LA CRUZ, a married couple, INTELLIQUICK DELIVERY, INC. an Arizona Corporation, MAJIK LEASING, LLC, an Arizona corporation; and MAJIK ENTERPRISES I, INC., an Arizona Corporation,<br><br>        Defendants. | No.  **CV2021-010875**<br><br><br><br>**PLAINTIFFS' HYBRID COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**Tier 3** |

1

Plaintiffs, William F. Forrest ("Forrest"), Jodi Miller ("Miller"), Michelle Martinez ("Martinez"), Wendy Smith ("Smith"), and Kenneth Turner ("Turner") (collectively "Plaintiffs"), by and through their attorneys, Lubin & Enoch, P.C., bring this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"); the Arizona Minimum Wage Act, A.R.S. §§ 23-362-365 ("AMWA"); the Fair Wages and Healthy Families Act, A.R.S. §§ 23-371-381 (the "Act"); A.R.S. § 23-202; and the equitable theory of restitution/unjust enrichment.

## INTRODUCTION

1.     Plaintiffs are current and former employees of Kenneth Maring ("Maring"), Cynthia Moore ("Moore"), Pat (Last Name Unknown) ("Pat"), John De La Cruz ("De La Cruz"), Keith Spizzirri ("Spizzirri") and companies, IntelliQuick Delivery, Inc., ("IntelliQuick"), Majik Leasing, LLC, and Majik Enterprises I, Inc. (hereinafter collectively referred to as "Defendants").

2.     This action is brought as a collective action under the FLSA, 29 U.S.C § 216 (b), to recover minimum wages, overtime wages, liquidated damages, attorneys' fees, and other statutory penalties resulting from Defendants' violations of the FLSA. This lawsuit is also brought as a class action under Arizona Rules of Civil Procedure ("ARCP") Rule 23, to recover unpaid minimum and overtime wages, unlawful deductions from wages, benefits, compensatory damages, treble damages, attorneys' fees, and any other statutory penalties resulting from Defendants' violations of the AMWA and the Act.

3.     In this lawsuit, Plaintiffs allege Defendants have knowingly misclassified Plaintiffs and Class Members as defined below (collectively referred to hereinafter as "Drivers," "Plaintiffs," and/or "Class Members"), as independent contractors, failed to pay them the statutorily required minimum wages and overtime wages, and failed to provide earned paid sick time. The proposed Class includes route, on-demand and freight drivers who either use their own vehicle or lease one from Defendants to make deliveries and pick-ups for IntelliQuick.

4.     Defendants benefit greatly by misclassifying Plaintiffs as independent contractors by shifting business expenses onto their employees. Defendants require Plaintiffs to pay weekly fees for use of Defendants' equipment, to process their pay checks, to maintain secondary OCC insurance, and mandatory uniform laundry fees, regardless of if they use the service. Defendants also require Plaintiffs to either use their personal cars for business purposes and pay for all car-related expenses, such as gas and vehicle repair and maintenance, or to rent a vehicle from Defendant Majik Leasing, or another specified and designated company at unnegotiable rates.

5.     By treating Plaintiffs as independent contractors instead of employees, Defendants avoid worker's compensation and unemployment payments, social security taxes, and other taxes and benefits owed to employees. As a result, Plaintiffs have been forced to saddle the costs of their employer. Defendants have also attempted and continue to attempt to avoid liability under wage protection statutes, like the AMWA and the FLSA. In doing so, Defendants are able to obtain a vast competitive advantage over competitors that treat their employees in compliance with federal and state law. As a

1   result, Defendants' misclassification drives down wages and undercuts fair labor

2   practices across the industry. Additionally, Defendants are unjustly enriched by these

3   practices.

4   **JURISDICTION AND VENUE**

5       6.      This Court has jurisdiction over the subject matter of this complaint

6   pursuant to 29 U.S.C. § 216(b) and A.R.S. § 12-123(A).

7       7.      This Court has personal jurisdiction over Defendants because they regularly

8   transact business in and have significant and continuous contact with Arizona.

9       8.      Venue is proper under A.R.S. § 12-401. Defendants Spizzirri, Moore, Pat,

10   Maring, and De La Cruz (hereinafter "the Individual Defendants") reside in Maricopa

11   County, Arizona. The principal place of business for Defendants is in Maricopa County,

12   Arizona.  A substantial part of the acts and omissions giving rise to the claims occurred in

13   this county.

14       9.      The amount of Plaintiffs' damages qualifies this matter as a Tier 3 case in

15   accordance with Rule8(b)(2) of the Arizona Rules of Civil Procedure.

16   **PARTIES**

17       10.     Currently and during all relevant time periods, Plaintiffs were residents of

18   Maricopa County, Arizona.

19       11.     Plaintiffs Forrest, Miller, Martinez, Smith, and Turner are current and

20   former employees of Defendants as that term is defined in 29 U.S.C. § 203(e)(1) and

21   A.R.S. § 23-362(A).

22

4

12. Plaintiffs hereby consent to opt-in to this lawsuit. *See* **Exhibit A** with the consent and opt-in forms for Miller, Smith and Forrest.

13. Pursuant to ARCP 23, Plaintiffs seek to represent all current and former drivers or couriers who made pick-ups or deliveries for or on behalf of IntelliQuick within the State of Arizona and who were paid and treated as independent contractors by IntelliQuick at any time on or after July 8, 2018 through the present date.

14. Plaintiffs request that they be permitted to serve as representatives of those who will join in the class action pursuant to ARCP 23.

15. Plaintiffs presently believe and allege that the class includes over one hundred (100) separate individuals who have worked for IntelliQuick since July 8, 2018. Accordingly, joinder of all members of the class would be impracticable.

16. The claims asserted herein on behalf of Plaintiffs and the class present questions of law and fact common to the class including, in particular, whether Defendants have failed to pay the requisite minimum wage compensation to their employees.

17. Plaintiffs' claims are typical of the claims of the class.

18. Plaintiffs, as representative parties, will fairly and adequately protect the interests of the class.

19. The prosecution of separate lawsuits by individual members of the class would not only be judicially inefficient but would create a risk of inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for Defendants.

5

20.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs Forrest, Miller, Martinez, Smith, and Turner seek to represent all other current or former similarly situated employees who have worked for Defendants in the past three (3) years, and who have not been paid the requisite minimum wage and overtime.

21.     Plaintiffs request that they be permitted to serve as representatives of those who will later consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216 (b) and class action status pursuant to ARCP 23.

22.     At all relevant times for this lawsuit, Defendant Keith Spizzirri was and is the President and an Owner of IntelliQuick. Spizzirri resides in Scottsdale, Arizona and works at IntelliQuick's headquarters, located at 4022 South 20th Street, Phoenix, Arizona 85040. At all relevant times to this lawsuit, Spizzirri has exercised direct and/or indirect supervisory authority over Plaintiffs. Upon information and belief, Spizzirri has been directly involved in decision affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to, decisions regarding employee classification, hiring, termination, hours worked, wages paid, deductions made to wages, and discipline.

23.     At all relevant times for this lawsuit, Spizzirri has been and continues to be Plaintiffs' "employer" within the meaning of 29 § 203(d) and A.R.S. § 23-362(B).

24.     Defendants Spizzirri and Miriam Spizzirri (hereinafter collectively referred to as the "Spizzirris") are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona. The acts

6

1   engaged in and the omissions made by the Spizzirris were performed as agents and for

2   the benefit of the marital community.

3       25.     During the relevant time period, Defendant Kenneth Maring was a Driver

4   Supervisor for IntelliQuick. Maring resides and works in Maricopa County, Arizona.

5   Maring exercised direct or indirect supervisor authority over Plaintiffs. Upon information

6   and belief, Maring has been directly involved in decisions affecting the terms and

7   conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to,

8   decisions involving hiring, termination, hours worked, wages paid, wage deductions

9   made, and discipline.

10      26.     Maring is an employer as that term is defined in 29 U.S.C. § 203(d) and

11  A.R.S. § 23-362(B).

12      27.     Defendants Kenneth and Jane Doe Maring (hereinafter collectively referred

13  to as the "Marings") are now, and at all times relevant hereto have been, husband and

14  wife, constituting a marital community under the laws of the State of Arizona.  The acts

15  engaged in and the omissions made by the Marings were performed as agents and for the

16  benefit of the marital community.

17      28.     During the relevant time period, Defendant Cynthia Moore was a Driver

18  Supervisor for IntelliQuick. Moore resides and works in Maricopa County, Arizona.

19  Moore exercised direct or indirect supervisor authority over Plaintiffs. Upon information

20  and belief, Moore has been directly involved in decisions affecting the terms and

21  conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to,

22

7

1    decisions involving hiring, termination, hours worked, wages paid, wage deductions

2    made, and discipline.

3         29.    At all relevant times for this lawsuit, Moore is an employer as that term is

4    defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

5         30.    Moore and John Doe Moore (hereinafter collectively referred to as the

6    "Moores") are now, and at all times relevant hereto have been, wife and husband,

7    constituting a marital community under the laws of the State of Arizona.  The acts

8    engaged in, and the omissions made by the Moores were performed as agents and for the

9    benefit of the marital community.

10        31.    During the relevant time period, Defendant John De La Cruz was a

11   Manager of the Freight Drivers. De La Cruz resides and works in Maricopa County,

12   Arizona. De La Cruz exercised direct and/or indirect supervisor authority over Plaintiffs.

13   Upon information and belief, De La Cruz has been directly involved in decisions

14   affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including,

15   but not limited to, decisions involving hiring, termination, hours worked, wages paid,

16   wage deductions made, and discipline.

17        32.    At all relevant times for this lawsuit, De La Cruz was an employer as that

18   term is defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

19        33.    De La Cruz and Jane Doe De La Cruz (hereinafter collectively referred to

20   as the "De La Cruz's") are now, and at all times relevant hereto have been, husband and

21   wife, constituting a marital community under the laws of the State of Arizona.  The acts

22

1    engaged in, and the omissions made by the De La Cruz's were performed as agents and

2    for the benefit of the marital community.

3         34.    During the relevant time period, Defendant Pat was a Manager of the

4    Freight Drivers. Pat resides and works in Maricopa County, Arizona. Pat exercised direct

5    and/or indirect supervisor authority over Plaintiffs. Upon information and belief, Pat has

6    been directly involved in decisions affecting the terms and conditions of employment for

7    Plaintiffs at IntelliQuick, including, but not limited to, decisions involving hiring,

8    termination, hours worked, wages paid, wage deductions made, and discipline.

9         35.    During the relevant time period, Pat was an employer as that term is

10   defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

11        36.    Pat and Jane Doe (hereinafter collectively referred to as the "Does") are

12   now, and at all times relevant hereto have been, husband and wife, constituting a marital

13   community under the laws of the State of Arizona.  The acts engaged in, and the

14   omissions made by the Does were performed as agents and for the benefit of the marital

15   community.

16        37.    IntelliQuick is an Arizona corporation with its principal place of business at

17   4022 South 20th Street Phoenix, Arizona 85040.

18        38.    IntelliQuick is Plaintiffs' employer as that term is defined in 29 U.S.C. §

19   203 (d) and A.R.S. § 23-362 (B). Moreover, upon information and belief, IntelliQuick is

20   a joint employer with one or more of the other named corporate Defendants.

21

22

39.    Upon information and belief, IntelliQuick is not only influenced and governed by the Spirrizzis, but there is such a unity of interest and ownership that the individuality or separateness of IntelliQuick and the Spizzirris have ceased to exist.

40.    Upon information and belief, the facts are such that an adherence to the fiction of the separate existence of IntelliQuick and the Spizzirris would, under these particular circumstances, sanction a fraud or promote injustice.

41.    Majik Leasing ("Majik") is an Arizona corporation that is owned and operated by Spizzirri. Majik's place of business it the same as IntelliQuick's principal place of business at 4022 S. 20th Street, Phoenix, Arizona 85040. Upon information, Majik owns multiple vehicles that are used by IntelliQuick, its employees and Drivers. IntelliQuick requires some drivers to use vehicles owned by Majik and pay weekly for their use, a cost deducted directly from the Drivers' pay.

42.    Defendant Majik Enterprises I, Inc. manages Majik, and Spizzirri is an officer and director of Majik Enterprises I. Upon information and belief, Defendant Majik Enterprises I, Inc. has a financial interest in IntelliQuick and/or Majik.

43.    Upon information and belief, all named Defendants constitute joint employers of Plaintiffs under the FLSA and AMWA. All joint employers are individually responsible for compliance with the FLSA. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 11469 (9th Cir. 1983) (citing 29 C.F.R. § 791.2(A)). The Department of Labor has stated that joint employment relationships exist when one (1) employer acts directly or indirectly in the interest of the other employers in relation to the employee; or two (2) employers are not completely disassociated with respect to the employment of a

1    particular employee and may be deemed to share control of the employee, directly or

2    indirectly, by reason that one employer controls, is controlled, or is under control with the

3    other employer. *Id.* 1469-70 (citing 29 C.F.R. § 791.2(b)). The same applies to AMWA.

4    A.R.S. § 23-362(B) (employer includes "[a]ny corporation, proprietorship, partnership,

5    joint venture, limited liability company, trust, association, political subdivision of the

6    state, individual or other entity acting directly or indirectly in the interest of an employer

7    in relation to an employee…")

8       44.    It is clear that IntelliQuick is engaged in commerce or in the production of

9    goods for commerce and/or handles, sells, or otherwise works on goods or materials that

10   have been moved in or produced for commerce, and that the enterprise's annual gross

11   volume of sales or business done is not less than $500,000.

12      45.    While working for IntelliQuick, Plaintiffs were "engaged in commerce" as

13   defined in the FLSA and corresponding regulations. 29 U.S.C. § 203(b); *see also* 29

14   C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour provisions

15   of the Act as employees 'engaged in commerce' are employees doing work involving or

16   related to the movement of persons or things . . . ." ).

17                              **GENERAL ALLEGATIONS**

18      46.    From on or about April 2012 through June 2020, Defendants employed

19   Plaintiff Forrest.  During this period of time, Forrest worked for Defendants as a route

20   driver who also occasionally delivered or picked-up on-demand items.  Forrest leased a

21   vehicle from Defendants to complete his two routes, delivering and picking up specimen

22   for Lab Corp in Flagstaff, Cottonwood, and Sedona and for Mayo Clinic.

47.     During the relevant time period, Forrest typically worked twelve (12) to thirteen (13) hours per day, five (5) days per week, including the time he spent picking and gassing up the company vehicle, loading and unloading coolers for his route, completing paperwork and processing specimen as required by the clients, and unloading his vehicle.

48.     Forrest paid out of pocket daily to gas up the vehicle, and two hundred dollars $200 per week was deducted from his pay to lease the vehicle. These business expenses were not reimbursed to him.

49.     From on or about November 2018 through September 25, 2020, Defendants employed Plaintiff Miller as a route driver who also occasionally delivered or picked-up on-demand items. Miller used her personal vehicle to complete her Saturday "West Valley" route and her Monday through Friday route, which included stops in Havasu, Parker, and Quartzsite for Idexx and Lab Corps.

50.     During the relevant time period, Miller worked fourteen (14) hours per day, five (5) days per week. During most of the relevant time period she routinely drove a Saturday route as well and occasionally covered other drivers' shifts on Sundays. In addition to transporting specimen, she also loaded and unloaded coolers, picked up needed supplies from IntelliQuick, and completed paperwork and processed specimen as required by the clients.

51.     Miller paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week. These business expenses were not reimbursed to her.

52.     From on or about October 2012 through July 2016 and again from on or about September 2018 to September 2020, Defendants employed Plaintiff Smith as a route driver who also occasionally delivered or picked-up on-demand items.

53.     During the relevant time period, Smith used her personal vehicle to complete her Bullhead City route, which included stops in Bullhead City, Gold Valley, Kingman, Wickenberg, and Phoenix for LabCorps, Quest Diagnostics, Western Eye Clinic and Idexx. She also drove a Saturday route for Lab Corps.

54.     During the relevant time period, Smith worked fourteen (14) to sixteen (16) hour days, five (5) days per week, and seven (7) hours on Saturday. In addition to transporting specimen, she also loaded and unloaded coolers, picked up needed supplies from IntelliQuick, and completed paperwork and processed specimen as required by the clients. She was also required to deliver dry ice and other items as needed to IntelliQuick drivers in Kingman.

55.     Smith paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week. These business expenses were not reimbursed to her.

56.     From on or about June 2014 to the present date, Defendants employed Plaintiff Martinez as a route driver.

57.     During the relevant time period, Martinez used her personal vehicle to complete her various routes. While IntelliQuick still had LabCorps routes, she worked eleven (11) to twelve (12) hour days driving a Phoenix metro area route during the day, a Maricopa route at night, and a Florence route on Saturdays. During this time period, she

1   worked, on average, sixty-five (65) hours per week. On or about mid-2018 through the

2   present date, she drives three runs daily of a Phoenix-area route for Garcia Labs, working

3   approximately fifty (50) hours per week.

4        58.    In addition to transporting specimen, she also loaded and unloaded coolers,

5   picked up needed supplies from IntelliQuick, and completed paperwork and processed

6   specimen as required by the clients. While driving the Lab Corp route, she put

7   approximately 1,200 miles per week on her vehicle and, on her new route, puts an

8   average 750 miles per week on her vehicle. These business expenses were not reimbursed

9   to her.

10        59.    From on or about March of 2014 through the present, Defendants employed

11   Plaintiff Turner as a freight/utility driver. Turner was assigned a company vehicle daily.

12   He was scheduled for an eight (8) hour shift during which he must be present and

13   available for a pick-up or delivery anywhere in the state. Turner might receive an

14   assignment at the end of the shift and he was required to complete the delivery or pickup,

15   with no additional compensation, regardless of how long it took to complete.  During his

16   down time, he worked in the warehouse organizing and scanning totes and boxes. During

17   the relevant time period, Turner was also a floater driver able to take over any route when

18   needed.

19        60.    On occasions in which Turner accepted extra work for additional

20   compensation after his shift, he was required to split the value of the job with the

21   company along a 40/60 split (60 for the company) or 35/65 split if he used the company

22   vehicle. Turner was not reimbursed for the cost of the vehicle.

14

61.     Turner worked anywhere from eight (8) to eleven (11) hours per day, five (5) and sometimes six (6) days per week.

62.     Plaintiffs were paid a fixed daily rate, regardless of the hours they worked, to complete their routes. Defendants could and occasionally did add stops to their manifests with no additional compensation. Plaintiffs had no power or control over this daily rate. In fact, Plaintiffs were subjected to an across-the-board, non-negotiated 7.5% pay cut effective May 31, 2020 with no change in their work duties or hours (**Exhibit B**).

63.     In addition to covering work related car expenses, Plaintiffs additionally had to cover expenses for uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing. These fees Defendants charged Plaintiffs were, and continue to be considerable, range from $35 to $40 per week. When these paycheck deductions and car rental and vehicle maintenance costs are taken together, they bring Plaintiffs' hourly wage each week under the minimum wage.

64.     Upon information and belief, the pay and work structures described above applied to all drivers employed by Defendants. At the start of the relevant pay period: Forrest earned $213.50 per day; Miller earned $223 per day; Smith earned $265 per day; Martinez earned $183 per day; and Turner earned $150 per day.  In May 2020, Plaintiffs and those similarly situated had their wages cut by 7.5% with no change in work duties or hours.

65.     Plaintiffs were, at times, given the option for additional on-demand work for a negotiable price. Often, this pay was missing from their pay statements.

66.     Plaintiffs were required to undergo unpaid training for several days prior to beginning work as a driver and anytime they changed routes.  Plaintiffs also participated in occasional unpaid (or nominally paid) trainings on weekends.

67.     Plaintiffs were not permitted to take time off, including when sick and, if they did, they were not paid for the time. When Plaintiffs took unauthorized time off, they were often threatened with termination.

68.     Plaintiffs, at times, were required to train other drivers.

69.     The company name "IntelliQuick" appears on Plaintiffs' pay logs and work uniforms.

70.     IntelliQuick does not set Plaintiffs' work schedules.  Instead, it gives Plaintiffs and others similarly situated a deadline for when they must have a truck, or packages, delivered to a customer.  It is then the Plaintiffs' responsibility to ensure that the truck, or packages, are delivered on-time.  Frequently, if not in most cases, these deadlines required Plaintiffs to drive more hours per day than is legal pursuant to 49 C.F.R. § 395.3, which permits property-carrying drivers to drive only eleven (11) hours during fourteen (14) consecutive-hour periods, which must follow a break of at least ten (10) hours.

71.     Defendants have failed to pay minimum wage to Plaintiffs and others similarly situated in accordance with 29 U.S.C. § 206 and A.R.S. § 23-364. IntelliQuick's paycheck deductions, along with its failure to fully reimburse Plaintiffs for their work-related expenses has caused the gross pay of Plaintiffs and others similarly situated to fall below the minimum wage.

16

72.     Although Defendants may claim in response to this Complaint that the Plaintiffs were employed as independent contractors, they will be unable to meet the burden of proof at trial according to the standards of the FLSA, or certainly, under the Arizona Minimum Wage Act, A.R.S. § 23-362(D) which requires the employer to prove independent contractor status by clear and convincing evidence.  Clear and convincing evidence is an exacting standard where "[a] party who has the burden of proof by clear and convincing evidence that the claim is highly probable." Rev. Ariz. Jury Instr. (Civil) Stand. 3 (6th ed. 2017).

73.     Further, Spizzirri and his companies, were named Defendants in an almost identical lawsuit filed several years ago, proving they have continued willfully misclassifying drivers as independent contractors to avoid paying overtime, employment taxes, and earned paid sick time. That lawsuit resulted in a court-approved, multi-million dollar settlement with the plaintiffs. *See Collinge v. Intelliquick Delivery, Inc.*, No. CV-12-00824-PHX-JWS, Docket No. 605 (D. Ariz. 2013).

**COLLECTIVE ACTION ALLEGATIONS**

74.     Plaintiffs bring an FLSA minimum and overtime wage standard claim on behalf of themselves and all similarly situated persons who are current or former drivers who made pick-ups or deliveries for or on behalf of IntelliQuick within the State of Arizona from July 8, 2018 to present, and who elect to join this action pursuant to 29 U.S.C.  216(b) ("FLSA Collective").

75.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern and practice of violating the FLSA with

17

1  respect to Plaintiffs and the FLSA Collective. This includes willfully failing to pay

2  Plaintiffs and the FLSA Collective minimum wage and overtime rate of pay for hours

3  they worked in excess of forty (40) hours per workweek.

4          76.     Upon information and belief, the FLSA Collective consists of many

5  similarly situated individuals who have been underpaid by Defendants in violation of the

6  FLSA and who would benefit from the issuance of a court-supervised notice of the

7  lawsuit and the opportunity to join the lawsuit. Those similarly situated collective

8  members are known to Defendants, are readily identifiable, and can be located through

9  their records. Notice should be sent to the members of the FLSA Collective pursuant to

10  29 U.S.C. § 216(b).

11                          **CLASS ACTION ALLEGATIONS**

12          77.     Plaintiffs also bring an AMWA, the Act, and restitution/unjust enrichment

13  class action (the "State Class") on behalf of themselves and all similarly situated persons

14  who work or have worked as employees for Intelliquick between July 8, 2018 to the

15  present date, who did not receive the Arizona minimum wage pursuant to A.R.S. § 23-

16  363(A), who did not receive paid sick time benefits pursuant to A.R.S. §§ 23-372-375,

17  who were unlawfully charged weekly fees as condition of employment, who were

18  coerced into purchasing goods and supplies for as part of their employment, and, whose

19  paid sick entitlement resulted instead in unjust enrichment to Defendants by way of

20  unconscionable contract terms. This is limited to those who do not elect to be excluded

21  from this action pursuant to ARCP 23(c)(2).

22

78.     The proposed State Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Defendants have at least sixty (60) employees at any given time, and many more who have come and gone over the years, who are similarly situated because they worked under and were subject to Defendants' policies and practices.

79.     There are questions of law and fact common to the State Class that predominate over any questions solely affecting individual members of the State Class.

80.     The claims of Plaintiffs are typical of the claims of the State Class they seek to represent. Plaintiffs and State Class Members work or have worked for Defendants and have been subjected to common policies and practices of failing to pay overtime owed and denying Plaintiffs paid sick time.

81.     Plaintiffs will fairly and adequately represent and protect the interests of the State Class.

82.     Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

83.     The State Class Members have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.

84.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it will eliminate the need for duplicative litigation which could result in inconsistent judgments regarding Defendants' practices and Plaintiffs' claims.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## FIRST CLAIM FOR RELIEF

### Violation of FLSA Minimum Wage Standard
### (All Plaintiffs and FLSA Collective)

85.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

86.     Defendants have willfully failed to pay wages due Plaintiffs in violation of the federal minimum wage law, 29 U.S.C. § 206.  Plaintiffs are entitled to recover all unpaid wages and liquidated damages pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### Violation of Arizona Minimum Wage Act
### (All Plaintiffs and State Class)

87.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

88.     Defendants have willfully failed to pay wages at the rate of the AMWA, violating A.R.S. § 23-363(A).  Plaintiffs are entitled to recover the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages pursuant to A.R.S. § 23-364(G).

89.     Defendants' violation of the AMWA was committed as a matter of a continuing course of employer conduct within the meaning of A.R.S. § 23-364(H).  As such, this action encompasses all violations that occurred from January 1, 2007 until the present day. *See* A.R.S. § 23-364(H). *Cf. Reyes v. LaFarga*, 2014 U.S. Dist. LEXIS 153338, *1 (D. Ariz. Oct. 21, 2014) (affirming the jury's "special verdict finding that Plaintiff worked 40-hour workweeks as Defendant's employee between March 24, 2007,

20

and August 31, 2011, and was therefore eligible for lost wages pursuant to the Arizona

Minimum Wage Act."); *Juvera v. Salcido*, 294 F.R.D. 516, 523 (D. Ariz. 2013)

[*construing* A.R.S. § 23-364(H)].

## THIRD CLAIM FOR RELIEF

### Unpaid Overtime Under FLSA
### (All Plaintiffs and FLSA Collective)

90.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

this Complaint as though fully and completely set forth herein.

91.     Defendants have willfully failed to compensate the FLSA Collective for

overtime hours they worked as required under 29 U.S.C. § 207.

92.     The FLSA Collective are entitled to receive compensation at a rate of one

and one-half times (1 ½ x) the regular wage rate for each hour worked they worked in

excess of forty hours in any week plus liquidated damages and attorneys' fees and costs

pursuant to 29 U.S.C. § 216(b).

93.     Because Defendants' violation was willful, the statute of limitations for an

overtime pay action is three years instead of two. 29 U.S.C. § 255(a).

## FOURTH CLAIM FOR RELIEF

### Paid Sick Time
### (All Plaintiffs and State Class)

94.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

this Complaint as though fully and completely set forth herein.

95.     At all times relevant to the Complaint, Defendants have been an employer

within the meaning of A.R.S. §§ 23-362(B) and 371(G).

21

96.     At all times hereinafter mentioned, Plaintiffs and the State Class have been employees within the meaning of A.R.S. §§ 23-362(A) and 371(F).

97.     During the relevant time period, Plaintiffs have been covered employees entitled to the protections of A.R.S. § 23-372(A) which requires that employees shall accrue at least one (1) hour of earned paid sick time for every thirty (30) hours worked.

98.     Defendants have willfully restrained and interfered with Plaintiffs rights in violation of A.R.S. § 23-374(A).

99.     Defendants willfully denied Forrest his right to paid sick time when they forbade him from leaving work when he reported that he was sick. Defendants forced Forrest to continue working until he was physically no longer capable of driving the delivery truck.

100.    Defendants willfully denied Miller her right to paid sick time when she was not paid for sick days taken after two separate surgeries. First, Miller had surgery in February of 2020, after which she was only allowed to take one day off work, for which she was not paid. Second, Miller underwent a second surgery later in February of 2020, in which she was only allowed to take one day off, and for which she was not paid.

101.    Defendants willfully denied Smith her right to paid sick time when they forced Smith to work even though she reported she was sick. On one occasion Defendants forced Smith, who was suffering from an allergic reaction, to still drive all her routes even though the swelling in her face impaired her vision.

102.    Defendants willfully denied Turner his right to paid sick time when he was injured in May of 2020 and did not receive any paid sick time for the seven week period in which he was recovering and not working.

103.    Defendants repeatedly and willfully denied Plaintiffs their rights by denying them paid sick time when he took sick time off from work.

104.     Plaintiffs and the State Class are entitled to recover the balance of the earned paid sick time owed, including interest thereon, and an additional amount equal to twice that amount owed pursuant to A.R.S § 364(G).

## **FIFTH CLAIM FOR RELIEF**

### **Exaction of Fee as Condition of Employment**
### **(All Plaintiffs and State Class)**

105.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

106.    Defendants unlawfully exacted fees from Plaintiffs as a condition of employment, in violation of A.R.S. § 23-202. By charging Plaintiffs weekly fees of between thirty five dollars ($35) to forty dollars ($40) or more for paycheck processing, uniform services, and scanners, Defendants were exacting a fee as condition of employment from Plaintiffs. By violating A.R.S. §23-202 Defendants are guilty of committing a class 2 misdemeanor.

107.    Defendants knowingly compelled and coerced Plaintiffs into purchasing goods and supplies as a part of their employment. Defendants required Plaintiffs to purchase uniform supplies, secondary car insurance, rent scanners, rent company

vehicles, and purchase masks from the Defendant. By doing so, Defendants compelled and coerced Plaintiffs to purchase goods or supplies from a particular person, and therefore violated A.R.S. § 23-202.

## SIXTH CLAIM FOR RELIEF

### Restitution/Unjust Enrichment
### (All Plaintiffs and State Class)

108.   Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

109.   Defendants' Independent Contractor Owner/Operator Agreement is unconscionable.

110.   Defendants' unconscionable agreements are void, or alternatively, voidable by Plaintiffs under the common law.

111.   Defendants have been unjustly enriched by the unconscionable terms of the contracts they imposed on the Plaintiffs and Class Members.

112.   Defendant have been unjustly enriched by the work performed by the Plaintiffs and Class Members without any compensation for the work performed.

113.   Defendants have been unjustly enriched by not providing Plaintiffs and Class Members with any paid sick time.

114.   Defendants have been unjustly enriched by the deductions made from the Plaintiffs and Class Members pay.

115.   Plaintiffs are entitled to restitution and/or damages in quantum meruit for the value of Defendants' unconscionable contracts conferred upon Defendants.

24

1    116.   Plaintiffs are entitled to restitution for all of Defendants' costs or fees that

2    have been levied upon Plaintiffs and Class Members, including weekly deductions,

3    uniform fees, check processing fees, insurance fees, and electronic device fees.

4                             **PRAYER FOR RELIEF**

5        Plaintiffs pray that they recover from Defendants the following:

6        117.   An award of unpaid minimum wages in an amount appropriate to the proof

7    adduced at trial pursuant to 29 U.S.C. §§ 206 and 216(b);

8        118.   An award of liquidated damages regarding # 1, *supra*, in an amount

9    appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b );

10       119.   In the event Defendants fail to satisfy any judgment for Plaintiffs, *to wit*,

11   satisfy a judgment against Defendants within 10 days of the Order becoming final,

12   Defendants shall pay Plaintiffs an amount which is treble the amount of the outstanding

13   judgment with interest thereon, in accordance with A.R.S. § 23-360;

14       120.   An enhancement payment of no less than five thousand dollars ($5,000) to

15   Plaintiffs as compensation for the expense they incurred on behalf of the class;

16       121.   Pre-judgment and post judgment interest on unpaid back wages pursuant to,

17   *inter alia*, A.R.S. § 23-364(G);

18       122.   Attorneys' fees pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G);

19       123.   Court costs and costs of litigation pursuant to 29 U.S.C. § 216(b), A.R.S. §

20   12-341 and A.R.S. § 23-364(G);

21       124.   A declaratory judgment pursuant to the Uniform Declaratory Judgments

22   Act, A.R.S. § 12-1831, *et seq.,* that Defendants have violated their statutory and legal

1    obligations and deprived the Plaintiffs of their rights, privileges, protections,

2    compensation, benefits, and entitlements under the law, as alleged herein; and

3        125.    Such other and further equitable relief as the Court deems just.

4        RESPECTUFLLY SUBMITTED this 9th day of July 2021.

5                                    LUBIN & ENOCH, P.C.

6

7                                    /s/ Nicholas J. Enoch
                                     Nicholas J. Enoch, Esq.
8                                    Attorney for Plaintiffs

9

10                      **CERTIFICATE OF SERVICE**

11   I hereby certify that on this 9th day of July 2021 I electronically filed and transmitted the
     attached Complaint using the AZ-Turbo Court E-filing Online System.

12

13   /s/ Cristina Gallardo-Sanidad

14

15

16

17

18

19

20

21

22

EXHIBIT A

# CONSENT TO JOIN WAGE CLAIM

Print Name: _____ Jodi Miller _____

1. I hereby consent to participate in a hybrid §16(b) collective/Rule 23 State Law Class action lawsuit against **IntelliQuick Delivery, Inc.**, *et al.*, to pursue my claims of unpaid wages, paid sick time, and overtime wage laws during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Arizona Minimum Wage Act, and the Arizona Fair Wages and Healthy Families Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at LUBIN & ENOCH, P.C. as my attorneys to prosecute my wage, sick pay, and overtime claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a §16(b) collective/Rule 23 State Law Class. I agree to serve as the Class Representative, if the Court so approves. If someone else serves as the class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at LUBIN & ENOCH, P.C., to use this consent to file my claim in a separate lawsuit or arbitration against the company.

Signature: Jodi Miller (Jul 8, 2021 11:53 PDT)               Date: Jul 8, 2021

OPT-IN CONSENT FORM
*William F. Forrest, et al. v. Keith Spizzirri, et al.*
Superior Court, Maricopa County

CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), *as amended*, 29 U.S.C. § 216(b):

1.  I understand that this lawsuit alleges the existence of claims for non-payment of the federal minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206-207. I hereby consent, agree and opt-in to become a Plaintiff herein and be bound by any judgment of the Court or any settlement of this action.

2.  I work(ed) as a Driver for Defendants Keith Spizzirri, Kenneth Maring, Cynthia Moore, Pat Doe, John De La Cruz, and companies, IntelliQuick Delivery, Inc., Majik Leasing, LLC, and Majik Enterprises I, Inc. (hereinafter collectively referred to as "Defendants"). I performed these duties from on or about  **November 30, 2018**          (insert date) through:

    A.   my last day as a Driver **S e p t e m b e r   2 5 ,   2 0 2 0**               (insert date); or

    B.   the present date (please circle if applicable).

3.  I specifically agree to be represented by attorneys for William Forrest, Wendy Smith, Michelle Martinez, Kenneth Turner, and Jodi Miller ("the named Plaintiffs"), Nicholas J. Enoch, Clara S. Acosta and William H. Holder, Lubin & Enoch, P.C. (jointly "Plaintiffs' Counsel) as my agents to prosecute this lawsuit on my behalf and to negotiate a settlement of any and all compensation claim(s) I have against the Defendants regarding my claims.

4.  By joining this litigation, I agree to be represented by Plaintiffs' Counsel in the litigation that Plaintiffs' counsel has filed, and authorize them, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning all matters relating to this litigation, including the method and manner of conducting and resolving the litigation, and the terms of representation by the attorneys. If Plaintiffs' Counsel later determine that there is no factual basis for my claim, I understand that they make take whatever steps are reasonably necessary to remove me from this lawsuit or, if need be, leave me out of the lawsuit in the first instance.

Print Name:   Jodi Miller

Signature:      _____                     Date Signed:  Jul 8, 2021

Home Address:  5220 W. Northern Avenue Apt 1015 Glendale, Arizona 85301

Phone Number(s):      602-554-4313

E-Mail Address(es):    odell.jodi82@gmail.com

RETURN THIS FORM TO:
Lubin & Enoch, P.C.
349 North 4th Avenue Phoenix, Arizona 85003-1505
cristina@lubinandenoch.com
Fax: (602) 626-3586
** NOTE **
Statute of limitations concerns mandate that you return this form as soon as possible to preserve your rights.

# Opt-in Form re: IQ (6129-001)

Final Audit Report                                                                    2021-07-08

| | |
|---|---|
| Created: | 2021-07-08 |
| By: | Cristina Gallardo-Sanidad (cristina@lubinandenoch.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUp8eZzl2SdEeB0UhXeqqRn4Z2KRV5rng |

## "Opt-in Form re: IQ (6129-001)" History

📄 Document created by Cristina Gallardo-Sanidad (cristina@lubinandenoch.com)
2021-07-08 - 6:48:57 PM GMT- IP address: 68.15.184.2

📧 Document emailed to Jodi miller (odell.jodi82@gmail.com) for signature
2021-07-08 - 6:49:24 GMT

📄 Email viewed by Jodi miller (odell.jodi82@gmail.com)
2021-07-08 - 6:52:05 PM GMT- IP address: 66.249.84.85

✒️ Document e-signed by Jodi miller (odell.jodi82@gmail.com)
Signature Date: 2021-07-08 - 6:53:14 PM GMT - Time Source: server- IP address: 174.248.192.83

✔️ Agreement completed.
2021-07-08 - 6:53:14 PM GMT

Adobe Sign

# CONSENT TO JOIN WAGE CLAIM

Print Name: _____ Wendy Smith_____

1. I hereby consent to participate in a hybrid §16(b) collective/Rule 23 State Law Class action lawsuit against **IntelliQuick Delivery, Inc.**, *et al.*, to pursue my claims of unpaid wages, paid sick time, and overtime wage laws during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Arizona Minimum Wage Act, and the Arizona Fair Wages and Healthy Families Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at LUBIN & ENOCH, P.C. as my attorneys to prosecute my wage, sick pay, and overtime claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a §16(b) collective/Rule 23 State Law Class. I agree to serve as the Class Representative, if the Court so approves. If someone else serves as the class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at LUBIN & ENOCH, P.C., to use this consent to file my claim in a separate lawsuit or arbitration against the company.

Signature: ~~wendy Smith Jul 8, 2021 13:52 PDT~~     Date: Jul 8, 2021

## OPT-IN CONSENT FORM
*William F. Forrest, et al. v. Keith Spizzirri, et al.*
Superior Court, Maricopa County

## CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), *as amended*, 29 U.S.C. § 216(b):

1.  I understand that this lawsuit alleges the existence of claims for non-payment of the federal minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206-207. I hereby consent, agree and opt-in to become a Plaintiff herein and be bound by any judgment of the Court or any settlement of this action.

2.  I work(ed) as a Driver for Defendants Keith Spizzirri, Kenneth Maring, Cynthia Moore, Pat Doe, John De La Cruz, and companies, IntelliQuick Delivery, Inc., Majik Leasing, LLC, and Majik Enterprises I, Inc. (hereinafter collectively referred to as "Defendants"). I performed these duties from on or about **S e p t e m b e r  2 8 ,  2 0 1 8** _____(insert date) through:

    A.  my last day as a Driver **S e p t e m b e r  2 1 ,  2 0 2 0** _____(insert date); or

    B.  the present date (please circle if applicable).

3.  I specifically agree to be represented by attorneys for William Forrest, Wendy Smith, Michelle Martinez, Kenneth Turner, and Jodi Miller ("the named Plaintiffs"), Nicholas J. Enoch, Clara S. Acosta and William H. Holder, Lubin & Enoch, P.C. (jointly "Plaintiffs' Counsel) as my agents to prosecute this lawsuit on my behalf and to negotiate a settlement of any and all compensation claim(s) I have against the Defendants regarding my claims.

4.  By joining this litigation, I agree to be represented by Plaintiffs' Counsel in the litigation that Plaintiffs' counsel has filed, and authorize them, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning all matters relating to this litigation, including the method and manner of conducting and resolving the litigation, and the terms of representation by the attorneys. If Plaintiffs' Counsel later determine that there is no factual basis for my claim, I understand that they make take whatever steps are reasonably necessary to remove me from this lawsuit or, if need be, leave me out of the lawsuit in the first instance.

Print Name: _Wendy Smith_____

Signature: ~~_____~~_____    Date Signed: _Jul 8, 2021_____

Home Address: _10535 W. Chickasaw Street Tolleson, Arizona 85353_____

Phone Number(s): _602-478-4368_____

E-Mail Address(es): _smithwendy2127@yahoo.com_____

RETURN THIS FORM TO:
Lubin & Enoch, P.C.
349 North 4th Avenue Phoenix, Arizona 85003-1505
cristina@lubinandenoch.com
Fax: (602) 626-3586
** NOTE **
Statute of limitations concerns mandate that you return this form as soon as possible to preserve your rights.

# Consent to Join lawsuit re: IQ (6129-001)

Final Audit Report                                                                 2021-07-08

| | |
|---|---|
| Created: | 2021-07-08 |
| By: | Cristina Gallardo-Sanidad (cristina@lubinandenoch.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAWFrSLJeukksTQjN5DRrRCzaZNFes69LH |

## "Consent to Join lawsuit re: IQ (6129-001)" History

Document created by Cristina Gallardo-Sanidad (cristina@lubinandenoch.com)
2021-07-08 - 7:10:30 PM GMT- IP address: 68.15.184.2

Document emailed to wendy smith (smithwendy2127@yahoo.com) for signature
2021-07-08 - 7:10:54 PM GMT

Email viewed by wendy smith (smithwendy2127@yahoo.com)
2021-07-08 - 8:32:03 PM GMT- IP address: 69.147.90.62

Document e-signed by wendy smith (smithwendy2127@yahoo.com)
Signature Date: 2021-07-08 - 8:52:29 PM GMT - Time Source: server- IP address: 68.15.184.2

Agreement completed.
2021-07-08 - 8:52:29 PM GMT

Adobe Sign

# CONSENT TO JOIN WAGE CLAIM

Print Name: _____William F. Forrest_____

1. I hereby consent to participate in a hybrid §16(b) collective/Rule 23 State Law Class action lawsuit against **IntelliQuick Delivery, Inc.**, *et al*., to pursue my claims of unpaid wages, paid sick time, and overtime wage laws during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Arizona Minimum Wage Act, and the Arizona Fair Wages and Healthy Families Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at LUBIN & ENOCH, P.C. as my attorneys to prosecute my wage, sick pay, and overtime claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a §16(b) collective/Rule 23 State Law Class. I agree to serve as the Class Representative, if the Court so approves. If someone else serves as the class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at LUBIN & ENOCH, P.C., to use this consent to file my claim in a separate lawsuit or arbitration against the company.

Signature: By william forrest (Jul 8, 2021 18:13 PDT)          Date: Jul 8, 2021

## OPT-IN CONSENT FORM
*William F. Forrest, et al. v. Keith Spizzirri, et al.*
Superior Court, Maricopa County

## CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), *as amended*, 29 U.S.C. § 216(b):

1.  I understand that this lawsuit alleges the existence of claims for non-payment of the federal minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206-207. I hereby consent, agree and opt-in to become a Plaintiff herein and be bound by any judgment of the Court or any settlement of this action.

2.  I work(ed) as a Driver for Defendants Keith Spizzirri, Kenneth Maring, Cynthia Moore, Pat Doe, John De La Cruz, and companies, IntelliQuick Delivery, Inc., Majik Leasing, LLC, and Majik Enterprises I, Inc. (hereinafter collectively referred to as "Defendants"). I performed these duties from on or about ___April 2012___ (insert date) through:

    A.  my last day as a Driver ___July 2020___ (insert date); or

    B.  the present date (please circle if applicable).

3.  I specifically agree to be represented by attorneys for William Forrest, Wendy Smith, Michelle Martinez, Kenneth Turner, and Jodi Miller ("the named Plaintiffs"), Nicholas J. Enoch, Clara S. Acosta and William H. Holder, Lubin & Enoch, P.C. (jointly "Plaintiffs' Counsel") as my agents to prosecute this lawsuit on my behalf and to negotiate a settlement of any and all compensation claim(s) I have against the Defendants regarding my claims.

4.  By joining this litigation, I agree to be represented by Plaintiffs' Counsel in the litigation that Plaintiffs' counsel has filed, and authorize them, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning all matters relating to this litigation, including the method and manner of conducting and resolving the litigation, and the terms of representation by the attorneys. If Plaintiffs' Counsel later determine that there is no factual basis for my claim, I understand that they make take whatever steps are reasonably necessary to remove me from this lawsuit or, if need be, leave me out of the lawsuit in the first instance.

Print Name: ___William F. Forrest___

Signature: _____   Date Signed: ___Jul 8, 2021___

Home Address: ___4902 W. Bethany Home Rd. Lot 2 Glendale, Arizona 85301___

Phone Number(s): ___602-435-2600___

E-Mail Address(es): ___mrbill817@gmail.com___

RETURN THIS FORM TO:
Lubin & Enoch, P.C.
349 North 4th Avenue Phoenix, Arizona 85003-1505
cristina@lubinandenoch.com
Fax: (602) 626-3586
** NOTE **
Statute of limitations concerns mandate that you return this form as soon as possible to preserve your rights.

EXHIBIT B



**IntelliQuick** *Delivery®*
*Faster. Better. Smarter.*

May 18, 2020

WENDY SMITH
SMITHWENDY2127@YAHOO.COM

Dear WENDY,

The relationship between IntelliQuick and its delivery partners is a valuable
asset contributing to the growth and success of this company. Together we
have witnessed history unfold as brokerages like Velocity Express and BeavEx
closed, companies merged, and the transportation industry experienced a
variety of peaks and valleys. The Owner Operator/Vendor Model fits well with
the transportation industry and the customers we serve. That commitment to
excellence as a delivery partner has allowed IntelliQuick to survive industry
challenges and continue to be a leader in the same-day industry.

During the COVID-19 crisis, IntelliQuick has been able to sustain 'business as
usual' while servicing our current customers, but the impact on the economy is
beginning to pose challenges. This is evident with the decline of customer
needs, offset by decreasing fuel prices, and a variety of factors affecting the
transportation industry as a whole. Additionally, when we brought on new
customers, more delivery partners were added
and insurance levels were increased, it allowed IntelliQuick to expand. All that
said, expenses have been increasing and revenue has been decreasing.

After reviewing company objectives and the future well-being of IntelliQuick as
a Broker, we have come to a difficult but necessary conclusion. Effective
5/31/2020, the gross settlement for all vendors providing delivery services
will be adjusted down by 7.5%.

This was an extremely tough decision, and we understand the impact this will
have on you and your family. Please know that we considered several other
alternatives, and the choice we made is the best option at this time and will
have the least impact on our delivery partners overall.

Your hard work is appreciated, and we thank you for your support as we all
strive for continued business success. We will continue to monitor this crisis

while servicing our clients with new and efficient strategies as well as dedicating a focus on business development.  Should you have any questions, please don't hesitate to ask.

All the best, Stay safe!

Keith Spizzirri
President
IntelliQuick Delivery and Logistics
Intellogistics
www.iqcando.com
602-723-0559
Keith@iqcando.com

**Person Filing:** Nicholas J. Enoch

**Address (if not protected):** 349 North Fourth Avenue

**City, State, Zip Code:** Phoenix, Arizona 85003

**Telephone:** 602-234-0008

**Email Address:** nick@lubinandenoch.com

**Lawyer's Bar Number:** 016473

**Licensed Fiduciary Number:** _____

For Clerk's Use Only

**Representing** ☐ Self, without a Lawyer **or** ☒ **Attorney for** ☒ **Plaintiff** **OR** ☐ **Defendant**

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

William Forrest, et al.
_____
Name of Plaintiff

Case No.   cv2021-010875
_____

Keith Spizzirri, et al.
_____
Name of Defendant

## WAIVER OF SERVICE

A.R.C.P. Rule 4 (f)

**TO:** Nicholas J. Enoch

(Name of Plaintiff or Plaintiff's Attorney)

**ACKNOWLEDGMENT OF WAIVER OF SERVICE.** I acknowledge receipt of your request that I waive service of a summons in regards to the above referenced action.

I also have received a copy of the **Complaint** and **Certificate of Compulsory Arbitration** in the action, **two** copies of this **Waiver of Service**, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Arizona Rules of Civil Procedure.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

**DEFAULT JUDGMENT.** I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within sixty (60) days after this waiver was sent, which was __9__/__2__/__2021__ (date sent), or within ninety (90) days after that date if the request was sent outside the United States.

**I swear or affirm under penalty of perjury that the contents of this Waiver are true and correct to the best of my knowledge and belief.**

_____
Signature of Defendant
 LAURENT R. G. BADOUX , Attorney for
 KEITH SPIZZIRRI and MIRIAM SPIZZIRRI,
 husband and wife_____
Printed Name of Defendant

_____9/15/2021_____
Date

---

## DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS

 Rule 4.1 and Rule 4.2 of the Arizona Rules of Civil Procedure require certain parties to cooperate in saving unnecessary cost of service of the summons and a pleading. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States, to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

 It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought into an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

 A defendant who waives service must, within the time specified on this waiver form, serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CVC27f- 100317