LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Clara S. Bustamante
State Bar No. 036044
Morgan L. Bigelow
State Bar No. 037516
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

William F. Forrest, a single man, Wendy Smith, a single woman, Michelle Martinez, a single woman, Jodi Miller, a married woman, and Kenneth Turner, a married man,

            Plaintiffs,

v.

Keith Spizzirri, and Miriam Spizzirri, husband and wife; Ken Maring and Jane Doe Maring, a married couple; Cynthia Moore and Jason Moore, a married couple; Pat Doe and Jane Doe I, husband and wife, John De La Cruz and Jane Doe De La Cruz, a married couple, IntelliQuick Delivery, Inc.. an Arizona Corporation, IntelliServe, LLC, an Arizona limited-liability company, Majik Leasing, LLC, an Arizona corporation; and Majik Enterprises I, INC., an Arizona Corporation,

            Defendants.

No. CV-21-01688-PHX-GMS

**PLAINTIFFS' HYBRID COLLECTIVE AND CLASS ACTION FIRST AMENDED COMPLAINT**

Plaintiffs, William F. Forrest ("Forrest"), Jodi Miller ("Miller"), Michelle Martinez ("Martinez"), Wendy Smith ("Smith"), and Kenneth Turner ("Turner") (collectively "Plaintiffs"), by and through their attorneys, Lubin & Enoch, P.C., bring this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"); the Arizona Minimum Wage Act, A.R.S. §§ 23-362-365 ("AMWA"); the Fair Wages and Healthy Families Act, A.R.S. §§ 23-371-381 (the "Act"); A.R.S. § 23-202; and the equitable theory of restitution/unjust enrichment.

## **INTRODUCTION**

1.      Plaintiffs are former employees of Kenneth Maring ("Maring"), Cynthia Moore ("Moore"), Pat (Last Name Unknown) ("Pat"), John De La Cruz ("De La Cruz"), Keith Spizzirri ("Spizzirri") and companies, IntelliQuick Delivery, Inc., ("IntelliQuick"), IntelliServe, LLC ("IntelliServe"), Majik Leasing, LLC, and Majik Enterprises I, Inc. (hereinafter collectively referred to as "Defendants").

2.      This action is brought as a collective action under the FLSA, 29 U.S.C § 216 (b), to recover minimum wages, overtime wages, liquidated damages, attorneys' fees, and other statutory penalties resulting from Defendants' violations of the FLSA. This lawsuit is also brought as a class action under Federal Rules of Civil Procedure ("FRCP") Rule 23, to recover unpaid minimum and overtime wages, unlawful deductions from wages, benefits, compensatory damages, treble damages, attorneys' fees, and any other statutory penalties resulting from Defendants' violations of the AMWA and the Act.

3.    In this lawsuit, Plaintiffs allege Defendants have knowingly misclassified Plaintiffs and Class Members as defined below (collectively referred to hereinafter as "Drivers," "Plaintiffs," and/or "Class Members"), as independent contractors, failed to pay them the statutorily required minimum wages and overtime wages, and failed to provide earned paid sick time.  The proposed Class includes route, on-demand and freight drivers who either use their own vehicle or lease one from Defendants to make deliveries and pick-ups for IntelliQuick.

4.    Defendants benefit greatly by misclassifying Plaintiffs as independent contractors by shifting business expenses onto their employees. Defendants require Plaintiffs to pay weekly fees for use of Defendants' equipment, to process their pay checks, to maintain secondary OCC insurance, and mandatory uniform laundry fees, regardless of if they use the service. Defendants also require Plaintiffs to either use their personal cars for business purposes and pay for all car-related expenses, such as gas and vehicle repair and maintenance, or to rent a vehicle from Defendant Majik Leasing, or another specified and designated company at unnegotiable rates.

5.    By treating Plaintiffs as independent contractors instead of employees, Defendants avoid worker's compensation and unemployment payments, social security taxes, and other taxes and benefits owed to employees. As a result, Plaintiffs have been forced to saddle the costs of their employer. Defendants have also attempted and continue to attempt to avoid liability under wage protection statutes, like the AMWA and the FLSA. In doing so, Defendants are able to obtain a vast competitive advantage over competitors that treat their employees in compliance with federal and state law. As a

result, Defendants' misclassification drives down wages and undercuts fair labor practices across the industry. Additionally, Defendants are unjustly enriched by these practices.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this complaint pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Defendants because they regularly transact business in and have significant and continuous contact with Arizona.

8.     Venue is proper under A.R.S. § 12-401. Defendants Spizzirri, Moore, Pat, Maring, and De La Cruz (hereinafter "the Individual Defendants") reside in Maricopa County, Arizona. The principal place of business for Defendants is in Maricopa County, Arizona.  A substantial part of the acts and omissions giving rise to the claims occurred in this county.

## PARTIES

9.     Currently and during all relevant time periods, Plaintiffs were residents of Maricopa County, Arizona.

10.     Plaintiffs Forrest, Miller, Martinez, Smith, and Turner are former employees of Defendants as that term is defined in 29 U.S.C. § 203(e)(1) and A.R.S. § 23-362(A).

11.     Plaintiffs hereby consent to opt-in to this lawsuit. *See* **Exhibit A** with the consent and opt-in forms for Miller, Smith, Forrest, and Martinez.

12.     Pursuant to FRCP 23, Plaintiffs seek to represent all current and former drivers or couriers who made pick-ups or deliveries for or on behalf of IntelliQuick within the State of Arizona and who were paid and treated as independent contractors by IntelliQuick at any time on or after July 8, 2018 through the present date.

13.     Plaintiffs request that they be permitted to serve as representatives of those who will join in the class action pursuant to FRCP 23.

14.     Plaintiffs presently believe and allege that the class includes over one hundred (100) separate individuals who have worked for IntelliQuick since July 8, 2018. Accordingly, joinder of all members of the class would be impracticable.

15.     The claims asserted herein on behalf of Plaintiffs and the class present questions of law and fact common to the class including, in particular, whether Defendants have failed to pay the requisite minimum wage compensation to their employees.

16.     Plaintiffs' claims are typical of the claims of the class.

17.     Plaintiffs, as representative parties, will fairly and adequately protect the interests of the class.

18.     The prosecution of separate lawsuits by individual members of the class would not only be judicially inefficient but would create a risk of inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for Defendants.

19.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs Forrest, Miller, Martinez, Smith, and Turner seek to represent all other current or former similarly situated employees who

1  have worked for Defendants in the past three (3) years, and who have not been paid the

2  requisite minimum wage and overtime.

3      20.    Plaintiffs request that they be permitted to serve as representatives of those

4  who will later consent to participate in this action and that this action be granted

5  collective action status pursuant to 29 U.S.C. § 216 (b) and class action status pursuant to

6  FRCP 23.

7      21.    At all relevant times for this lawsuit, Defendant Keith Spizzirri was and is

8  the President and an Owner of IntelliQuick. Spizzirri resides in Scottsdale, Arizona and

9  works at IntelliQuick's headquarters, located at 4022 South 20th Street, Phoenix, Arizona

10  85040. At all relevant times to this lawsuit, Spizzirri has exercised direct and/or indirect

11  supervisory authority over Plaintiffs. Upon information and belief, Spizzirri has been

12  directly involved in decision affecting the terms and conditions of employment for

13  Plaintiffs at IntelliQuick, including, but not limited to, decisions regarding employee

14  classification, hiring, termination, hours worked, wages paid, deductions made to wages,

15  and discipline.

16      22.    At all relevant times for this lawsuit, Spizzirri has been and continues to be

17  Plaintiffs' "employer" within the meaning of 29 § 203(d) and A.R.S. § 23-362(B).

18      23.    Defendants Spizzirri and Miriam Spizzirri (hereinafter collectively referred

19  to as the "Spizzirris") are now, and at all times relevant hereto have been, husband and

20  wife, constituting a marital community under the laws of the State of Arizona. The acts

21  engaged in and the omissions made by the Spizzirris were performed as agents and for

22  the benefit of the marital community.

24.     During the relevant time period, Defendant Kenneth Maring was a Driver Supervisor for IntelliQuick. Maring resides and works in Maricopa County, Arizona. Maring exercised direct or indirect supervisor authority over Plaintiffs. Upon information and belief, Maring has been directly involved in decisions affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to, decisions involving hiring, termination, hours worked, wages paid, wage deductions made, and discipline.

25.      Maring is an employer as that term is defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

26.     Defendants Kenneth and Jane Doe Maring (hereinafter collectively referred to as the "Marings") are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in and the omissions made by the Marings were performed as agents and for the benefit of the marital community.

27.     During the relevant time period, Defendant Cynthia Moore was a Driver Supervisor for IntelliQuick. Moore resides and works in Maricopa County, Arizona. Moore exercised direct or indirect supervisor authority over Plaintiffs. Upon information and belief, Moore has been directly involved in decisions affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to, decisions involving hiring, termination, hours worked, wages paid, wage deductions made, and discipline.

28.     At all relevant times for this lawsuit, Moore is an employer as that term is defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

29.     Moore and Jason Moore (hereinafter collectively referred to as the "Moores") are now, and at all times relevant hereto have been, wife and husband, constituting a marital community under the laws of the State of Arizona.  The acts engaged in, and the omissions made by the Moores were performed as agents and for the benefit of the marital community.

30.     During the relevant time period, Defendant John De La Cruz was a Manager of the Freight Drivers. De La Cruz resides and works in Maricopa County, Arizona. De La Cruz exercised direct and/or indirect supervisor authority over Plaintiffs. Upon information and belief, De La Cruz has been directly involved in decisions affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to, decisions involving hiring, termination, hours worked, wages paid, wage deductions made, and discipline.

31.     At all relevant times for this lawsuit, De La Cruz was an employer as that term is defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

32.     De La Cruz and Jane Doe De La Cruz (hereinafter collectively referred to as the "De La Cruz's") are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in, and the omissions made by the De La Cruz's were performed as agents and for the benefit of the marital community.

33.    During the relevant time period, Defendant Pat was a Manager of the Freight Drivers. Pat resides and works in Maricopa County, Arizona. Pat exercised direct and/or indirect supervisor authority over Plaintiffs. Upon information and belief, Pat has been directly involved in decisions affecting the terms and conditions of employment for Plaintiffs at IntelliQuick, including, but not limited to, decisions involving hiring, termination, hours worked, wages paid, wage deductions made, and discipline.

34.    During the relevant time period, Pat was an employer as that term is defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

35.    Pat and Jane Doe (hereinafter collectively referred to as the "Does") are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in, and the omissions made by the Does were performed as agents and for the benefit of the marital community.

36.    IntelliQuick is an Arizona corporation with its principal place of business at 4022 South 20th Street Phoenix, Arizona 85040.

37.    IntelliQuick is Plaintiffs' employer as that term is defined in 29 U.S.C. § 203 (d) and A.R.S. § 23-362 (B). Moreover, upon information and belief, IntelliQuick is a joint employer with IntelliServe and one or more of the other named corporate Defendants. IntelliQuick and IntelliServe will hereinafter be collectively referred to as "IntelliQuick").

38.     Upon information and belief, IntelliQuick is not only influenced and governed by the Spirrizzis, but there is such a unity of interest and ownership that the individuality or separateness of IntelliQuick and the Spizzirris have ceased to exist.

39.     Upon information and belief, the facts are such that an adherence to the fiction of the separate existence of IntelliQuick and the Spizzirris would, under these particular circumstances, sanction a fraud or promote injustice.

40.     Majik Leasing ("Majik") is an Arizona corporation that is owned and operated by Spizzirri. Majik's place of business it the same as IntelliQuick's principal place of business at 4022 S. 20th Street, Phoenix, Arizona 85040. Upon information, Majik owns multiple vehicles that are used by IntelliQuick, its employees and Drivers. IntelliQuick requires some drivers to use vehicles owned by Majik and pay weekly for their use, a cost deducted directly from the Drivers' pay.

41.     Defendant Majik Enterprises I, Inc. manages Majik, and Spizzirri is an officer and director of Majik Enterprises I. Upon information and belief, Defendant Majik Enterprises I, Inc. has a financial interest in IntelliQuick and/or Majik.

42.     Upon information and belief, all named Defendants constitute joint employers of Plaintiffs under the FLSA and AMWA. All joint employers are individually responsible for compliance with the FLSA. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 11469 (9th Cir. 1983) (citing 29 C.F.R. § 791.2(A)). The Department of Labor has stated that joint employment relationships exist when one (1) employer acts directly or indirectly in the interest of the other employers in relation to the employee; or two (2) employers are not completely disassociated with respect to the employment of a

1   particular employee and may be deemed to share control of the employee, directly or

2   indirectly, by reason that one employer controls, is controlled, or is under control with the

3   other employer. *Id.* 1469-470 (citing 29 C.F.R. § 791.2(b)). The same applies to AMWA.

4   A.R.S. § 23-362(B) (employer includes "[a]ny corporation, proprietorship, partnership,

5   joint venture, limited liability company, trust, association, political subdivision of the

6   state, individual or other entity acting directly or indirectly in the interest of an employer

7   in relation to an employee…")

8       43.    It is clear that IntelliQuick is engaged in commerce or in the production of

9   goods for commerce and/or handles, sells, or otherwise works on goods or materials that

10  have been moved in or produced for commerce, and that the enterprise's annual gross

11  volume of sales or business done is not less than $500,000.

12      44.    While working for IntelliQuick, Plaintiffs were "engaged in commerce" as

13  defined in the FLSA and corresponding regulations. 29 U.S.C. § 203(b); *see also* 29

14  C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour provisions

15  of the Act as employees 'engaged in commerce' are employees doing work involving or

16  related to the movement of persons or things . . . .").

17                              **GENERAL ALLEGATIONS**

18      45.    From on or about April 2012 through June 2020, Defendants employed

19  Plaintiff Forrest.  During this period of time, Forrest worked for Defendants as a route

20  driver who also occasionally delivered or picked-up on-demand items.  Forrest leased a

21  vehicle from Defendants to complete his two routes, delivering and picking up specimen

22  for Lab Corp in Flagstaff, Cottonwood, and Sedona and for Mayo Clinic.

11

46.     During the relevant time period, Forrest typically worked twelve (12) to thirteen (13) hours per day, five (5) days per week, including the time he spent picking and gassing up the company vehicle, loading and unloading coolers for his route, completing paperwork and processing specimen as required by the clients, and unloading his vehicle.

47.     Forrest paid out of pocket daily to gas up the vehicle, and two hundred dollars $200 per week was deducted from his pay to lease the vehicle. These business expenses were not reimbursed to him.

48.     From on or about November 2018 through September 25, 2020, Defendants employed Plaintiff Miller as a route driver who also occasionally delivered or picked-up on-demand items. Miller used her personal vehicle to complete her Saturday "West Valley" route and her Monday through Friday route, which included stops in Havasu, Parker, and Quartzsite for Idexx and Lab Corps.

49.     During the relevant time period, Miller worked fourteen (14) hours per day, five (5) days per week. During most of the relevant time period she routinely drove a Saturday route as well and occasionally covered other drivers' shifts on Sundays. In addition to transporting specimen, she also loaded and unloaded coolers, picked up needed supplies from IntelliQuick, and completed paperwork and processed specimen as required by the clients.

50.     Miller paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week. These business expenses were not reimbursed to her.

12

51.     From on or about October 2012 through July 2016 and again from on or about September 2018 to September 2020, Defendants employed Plaintiff Smith as a route driver who also occasionally delivered or picked-up on-demand items.

52.     During the relevant time period, Smith used her personal vehicle to complete her Bullhead City route, which included stops in Bullhead City, Gold Valley, Kingman, Wickenberg, and Phoenix for LabCorps, Quest Diagnostics, Western Eye Clinic and Idexx. She also drove a Saturday route for Lab Corps.

53.     During the relevant time period, Smith worked fourteen (14) to sixteen (16) hour days, five (5) days per week, and seven (7) hours on Saturday. In addition to transporting specimen, she also loaded and unloaded coolers, picked up needed supplies from IntelliQuick, and completed paperwork and processed specimen as required by the clients. She was also required to deliver dry ice and other items as needed to IntelliQuick drivers in Kingman.

54.     Smith paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week. These business expenses were not reimbursed to her.

55.     From on or about June 2014 to the present date, Defendants employed Plaintiff Martinez as a route driver.

56.     During the relevant time period, Martinez used her personal vehicle to complete her various routes. While IntelliQuick still had LabCorps routes, she worked eleven (11) to twelve (12) hour days driving a Phoenix metro area route during the day, a Maricopa route at night, and a Florence route on Saturdays. During this time period, she

1   worked, on average, sixty-five (65) hours per week. On or about mid-2018 through the

2   present date, she drives three runs daily of a Phoenix-area route for Garcia Labs, working

3   approximately fifty (50) hours per week.

4        57.    In addition to transporting specimen, she also loaded and unloaded coolers,

5   picked up needed supplies from IntelliQuick, and completed paperwork and processed

6   specimen as required by the clients. While driving the Lab Corp route, she put

7   approximately 1,200 miles per week on her vehicle and, on her new route, puts an

8   average 750 miles per week on her vehicle. These business expenses were not reimbursed

9   to her.

10        58.    From on or about March of 2014 through the present, Defendants employed

11   Plaintiff Turner as a freight/utility driver. Turner was assigned a company vehicle daily.

12   He was scheduled for an eight (8) hour shift during which he must be present and

13   available for a pick-up or delivery anywhere in the state. Turner might receive an

14   assignment at the end of the shift and he was required to complete the delivery or pickup,

15   with no additional compensation, regardless of how long it took to complete.  During his

16   down time, he worked in the warehouse organizing and scanning totes and boxes. During

17   the relevant time period, Turner was also a floater driver able to take over any route when

18   needed.

19        59.    On occasions in which Turner accepted extra work for additional

20   compensation after his shift, he was required to split the value of the job with the

21   company along a 40/60 split (60 for the company) or 35/65 split if he used the company

22   vehicle. Turner was not reimbursed for the cost of the vehicle.

14

60.     Turner worked anywhere from eight (8) to eleven (11) hours per day, five (5) and sometimes six (6) days per week.

61.     Plaintiffs were paid a fixed daily rate, regardless of the hours they worked, to complete their routes. Defendants could and occasionally did add stops to their manifests with no additional compensation. Plaintiffs had no power or control over this daily rate. In fact, Plaintiffs were subjected to an across-the-board, non-negotiated 7.5% pay cut effective May 31, 2020, with no change in their work duties or hours (**Exhibit B**).

62.     In addition to covering work related car expenses, Plaintiffs additionally had to cover expenses for uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing. These fees Defendants charged Plaintiffs were, and continue to be considerable, range from $35 to $40 per week. When these paycheck deductions and car rental and vehicle maintenance costs are taken together, they bring Plaintiffs' hourly wage each week under the minimum wage.

63.     Upon information and belief, the pay and work structures described above applied to all drivers employed by Defendants. At the start of the relevant pay period: Forrest earned $213.50 per day; Miller earned $223 per day; Smith earned $265 per day; Martinez earned $183 per day; and Turner earned $150 per day.  In May 2020, Plaintiffs and those similarly situated had their wages cut by 7.5% with no change in work duties or hours.

64.     Plaintiffs were, at times, given the option for additional on-demand work for a negotiable price. Often, this pay was missing from their pay statements.

65.     Plaintiffs were required to undergo unpaid training for several days prior to beginning work as a driver and anytime they changed routes.  Plaintiffs also participated in occasional unpaid (or nominally paid) trainings on weekends.

66.     Plaintiffs were not permitted to take time off, including when sick and, if they did, they were not paid for the time. When Plaintiffs took unauthorized time off, they were often threatened with termination.

67.     Plaintiffs, at times, were required to train other drivers.

68.     The company name "IntelliQuick" appears on Plaintiffs' pay logs and work uniforms.

69.     IntelliQuick does not set Plaintiffs' work schedules.  Instead, it gives Plaintiffs and others similarly situated a deadline for when they must have a truck, or packages, delivered to a customer.  It is then the Plaintiffs' responsibility to ensure that the truck, or packages, are delivered on-time.  Frequently, if not in most cases, these deadlines required Plaintiffs to drive more hours per day than is legal pursuant to 49 C.F.R. § 395.3, which permits property-carrying drivers to drive only eleven (11) hours during fourteen (14) consecutive-hour periods, which must follow a break of at least ten (10) hours.

70.     Defendants have failed to pay minimum wage to Plaintiffs and others similarly situated in accordance with 29 U.S.C. § 206 and A.R.S. § 23-364. IntelliQuick's paycheck deductions, along with its failure to fully reimburse Plaintiffs for their work-related expenses has caused the gross pay of Plaintiffs and others similarly situated to fall below the minimum wage.

71.     Although Defendants may claim in response to this Complaint that the Plaintiffs were employed as independent contractors, they will be unable to meet the burden of proof at trial according to the standards of the FLSA, or certainly, under the Arizona Minimum Wage Act, A.R.S. § 23-362(D) which requires the employer to prove independent contractor status by clear and convincing evidence.  Clear and convincing evidence is an exacting standard where "[a] party who has the burden of proof by clear and convincing evidence that the claim is highly probable." Rev. Ariz. Jury Instr. (Civil) Stand. 3 (6th ed. 2017).

72.     Further, Spizzirri and his companies, were named Defendants in an almost identical lawsuit filed several years ago, proving they have continued willfully misclassifying drivers as independent contractors to avoid paying overtime, employment taxes, and earned paid sick time. That lawsuit resulted in a court-approved, multi-million dollar settlement with the plaintiffs. *See Collinge v. Intelliquick Delivery, Inc.*, No. CV-12-00824-PHX-JWS, Docket No. 605 (D. Ariz. 2013).

**COLLECTIVE ACTION ALLEGATIONS**

73.     Plaintiffs bring an FLSA minimum and overtime wage standard claim on behalf of themselves and all similarly situated persons who are current or former drivers who made pick-ups or deliveries for or on behalf of IntelliQuick within the State of Arizona from July 8, 2018 to present, and who elect to join this action pursuant to 29 U.S.C.  216(b) ("FLSA Collective").

74.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern and practice of violating the FLSA with

17

1    respect to Plaintiffs and the FLSA Collective. This includes willfully failing to pay

2    Plaintiffs and the FLSA Collective minimum wage and overtime rate of pay for hours

3    they worked in excess of forty (40) hours per workweek.

4         75.    Upon information and belief, the FLSA Collective consists of many

5    similarly situated individuals who have been underpaid by Defendants in violation of the

6    FLSA and who would benefit from the issuance of a court-supervised notice of the

7    lawsuit and the opportunity to join the lawsuit. Those similarly situated collective

8    members are known to Defendants, are readily identifiable, and can be located through

9    their records. Notice should be sent to the members of the FLSA Collective pursuant to

10   29 U.S.C. § 216(b).

11   <center>**CLASS ACTION ALLEGATIONS**</center>

12        76.    Plaintiffs also bring an AMWA, the Act, and restitution/unjust enrichment

13   class action (the "State Class") on behalf of themselves and all similarly situated persons

14   who work or have worked as employees for Intelliquick between July 8, 2018 to the

15   present date, who did not receive the Arizona minimum wage pursuant to A.R.S. § 23-

16   363(A), who did not receive paid sick time benefits pursuant to A.R.S. §§ 23-372-375,

17   who were unlawfully charged weekly fees as condition of employment, who were

18   coerced into purchasing goods and supplies for as part of their employment, and, whose

19   paid sick entitlement resulted instead in unjust enrichment to Defendants by way of

20   unconscionable contract terms. This is limited to those who do not elect to be excluded

21   from this action pursuant to FRCP 23(c)(2).

22

<center>18</center>

77.     The proposed State Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Defendants have at least sixty (60) employees at any given time, and many more who have come and gone over the years, who are similarly situated because they worked under and were subject to Defendants' policies and practices.

78.     There are questions of law and fact common to the State Class that predominate over any questions solely affecting individual members of the State Class.

79.     The claims of Plaintiffs are typical of the claims of the State Class they seek to represent. Plaintiffs and State Class Members work or have worked for Defendants and have been subjected to common policies and practices of failing to pay overtime owed and denying Plaintiffs paid sick time.

80.     Plaintiffs will fairly and adequately represent and protect the interests of the State Class.

81.     Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

82.     The State Class Members have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it will eliminate the need for duplicative litigation which could result in inconsistent judgments regarding Defendants' practices and Plaintiffs' claims.

1

### FIRST CLAIM FOR RELIEF

2

**Violation of FLSA Minimum Wage Standard
(All Plaintiffs and FLSA Collective)**

3

4

84.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

this Complaint as though fully and completely set forth herein.

5

6

85.     Defendants have willfully failed to pay wages due Plaintiffs in violation of

the federal minimum wage law, 29 U.S.C. § 206.  Plaintiffs are entitled to recover all

7

unpaid wages and liquidated damages pursuant to 29 U.S.C. § 216(b).

8

### SECOND CLAIM FOR RELIEF

9

**Violation of Arizona Minimum Wage Act
(All Plaintiffs and State Class)**

10

11

86.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

12

this Complaint as though fully and completely set forth herein.

13

87.     Defendants have willfully failed to pay wages at the rate of the AMWA,

14

violating A.R.S. § 23-363(A).  Plaintiffs are entitled to recover the balance of the wages

15

owed, including interest thereon, and an additional amount equal to twice the underpaid

16

wages pursuant to A.R.S. § 23-364(G).

17

88.     Defendants' violation of the AMWA was committed as a matter of a

18

continuing course of employer conduct within the meaning of A.R.S. § 23-364(H).  As

19

such, this action encompasses all violations that occurred from January 1, 2007 until the

20

present day.  *See* A.R.S. § 23-364(H).  *Cf. Reyes v. LaFarga*, 2014 U.S. Dist. LEXIS

21

153338, *1 (D. Ariz. Oct. 21, 2014) (affirming the jury's "special verdict finding that

22

Plaintiff worked 40-hour workweeks as Defendant's employee between March 24, 2007,

and August 31, 2011, and was therefore eligible for lost wages pursuant to the Arizona

Minimum Wage Act."); *Juvera v. Salcido*, 294 F.R.D. 516, 523 (D. Ariz. 2013)

(*construing* A.R.S. § 23-364(H).

### THIRD CLAIM FOR RELIEF

**Unpaid Overtime Under FLSA**
**(All Plaintiffs and FLSA Collective)**

89.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

this Complaint as though fully and completely set forth herein.

90.     Defendants have willfully failed to compensate the FLSA Collective for

overtime hours they worked as required under 29 U.S.C. § 207.

91.     The FLSA Collective are entitled to receive compensation at a rate of one

and one-half times (1 ½ x) the regular wage rate for each hour worked they worked in

excess of forty hours in any week plus liquidated damages and attorneys' fees and costs

pursuant to 29 U.S.C. § 216(b).

92.     Because Defendants' violation was willful, the statute of limitations for an

overtime pay action is three years instead of two. 29 U.S.C. § 255(a).

### FOURTH CLAIM FOR RELIEF

**Paid Sick Time**
**(All Plaintiffs and State Class)**

93.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in

this Complaint as though fully and completely set forth herein.

94.     At all times relevant to the Complaint, Defendants have been an employer

within the meaning of A.R.S. §§ 23-362(B) and 371(G).

21

95.     At all times hereinafter mentioned, Plaintiffs and the State Class have been employees within the meaning of A.R.S. §§ 23-362(A) and 371(F).

96.     During the relevant time period, Plaintiffs have been covered employees entitled to the protections of A.R.S. § 23-372(A) which requires that employees shall accrue at least one (1) hour of earned paid sick time for every thirty (30) hours worked.

97.     Defendants have willfully restrained and interfered with Plaintiffs rights in violation of A.R.S. § 23-374(A).

98.     Defendants willfully denied Forrest his right to paid sick time when they forbade him from leaving work when he reported that he was sick. Defendants forced Forrest to continue working until he was physically no longer capable of driving the delivery truck.

99.     Defendants willfully denied Miller her right to paid sick time when she was not paid for sick days taken after two separate surgeries. First, Miller had surgery in February of 2020, after which she was only allowed to take one day off work, for which she was not paid. Second, Miller underwent a second surgery later in February of 2020, in which she was only allowed to take one day off, and for which she was not paid.

100.    Defendants willfully denied Smith her right to paid sick time when they forced Smith to work even though she reported she was sick. On one occasion Defendants forced Smith, who was suffering from an allergic reaction, to still drive all her routes even though the swelling in her face impaired her vision.

101.    Defendants willfully denied Turner his right to paid sick time when he was injured in May of 2020 and did not receive any paid sick time for the seven week period in which he was recovering and not working.

102.    Defendants repeatedly and willfully denied Plaintiffs their rights by denying them paid sick time when he took sick time off from work.

103.    Plaintiffs and the State Class are entitled to recover the balance of the earned paid sick time owed, including interest thereon, and an additional amount equal to twice that amount owed pursuant to A.R.S § 364(G).

## FIFTH CLAIM FOR RELIEF

### Exaction of Fee as Condition of Employment
### (All Plaintiffs and State Class)

104.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

105.    Defendants unlawfully exacted fees from Plaintiffs as a condition of employment, in violation of A.R.S. § 23-202. By charging Plaintiffs weekly fees of between thirty-five dollars ($35) to forty dollars ($40) or more for paycheck processing, uniform services, and scanners, Defendants were exacting a fee as condition of employment from Plaintiffs. By violating A.R.S. § 23-202 Defendants are guilty of committing a class 2 misdemeanor.

106.    Defendants knowingly compelled and coerced Plaintiffs into purchasing goods and supplies as a part of their employment. Defendants required Plaintiffs to purchase uniform supplies, secondary car insurance, rent scanners, rent company

23

1   vehicles, and purchase masks from the Defendant. By doing so, Defendants compelled

2   and coerced Plaintiffs to purchase goods or supplies from a particular person, and

3   therefore violated A.R.S. § 23-202.

### SIXTH CLAIM FOR RELIEF

**Restitution/Unjust Enrichment**
**(All Plaintiffs and State Class)**

107.    Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

108.    Defendants' Independent Contractor Owner/Operator Agreement is unconscionable.

109.    Defendants' unconscionable agreements are void, or alternatively, voidable by Plaintiffs under the common law.

110.    Defendants have been unjustly enriched by the unconscionable terms of the contracts they imposed on the Plaintiffs and Class Members.

111.    Defendant have been unjustly enriched by the work performed by the Plaintiffs and Class Members without any compensation for the work performed.

112.    Defendants have been unjustly enriched by not providing Plaintiffs and Class Members with any paid sick time.

113.    Defendants have been unjustly enriched by the deductions made from the Plaintiffs and Class Members pay.

114.    Plaintiffs are entitled to restitution and/or damages in quantum meruit for the value of Defendants' unconscionable contracts conferred upon Defendants.

115.    Plaintiffs are entitled to restitution for all of Defendants' costs or fees that have been levied upon Plaintiffs and Class Members, including weekly deductions, uniform fees, check processing fees, insurance fees, and electronic device fees.

### PRAYER FOR RELIEF

Plaintiffs pray that they recover from Defendants the following:

116.    An award of unpaid minimum wages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 206 and 216(b);

117.    An award of liquidated damages regarding # 1, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

118.    In the event Defendants fail to satisfy any judgment for Plaintiffs, *to wit*, satisfy a judgment against Defendants within 10 days of the Order becoming final, Defendants shall pay Plaintiffs an amount which is treble the amount of the outstanding judgment with interest thereon, in accordance with A.R.S. § 23-360;

119.    An enhancement payment of no less than five thousand dollars ($5,000) to Plaintiffs as compensation for the expense they incurred on behalf of the class;

120.    Pre-judgment and post judgment interest on unpaid back wages pursuant to, *inter alia*, A.R.S. § 23-364(G);

121.    Attorneys' fees pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G);

122.    Court costs and costs of litigation pursuant to 29 U.S.C. § 216(b), A.R.S. § 12-341 and A.R.S. § 23-364(G);

123.    A declaratory judgment pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831, *et seq.,* that Defendants have violated their statutory and legal

obligations and deprived the Plaintiffs of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein; and

124.    Such other and further equitable relief as the Court deems just.

RESPECTUFLLY SUBMITTED this 26th day of July 2024.

LUBIN & ENOCH, P.C.


/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July 2024 I electronically filed and transmitted the attached First Amended Complaint using the CM/ECF Filing System.


/s/ Cristina Gallardo-Sanidad