LUBIN, ENOCH & BUSTAMANTE, P.C.
Nicholas J. Enoch, State Bar No. 016473
Clara S. Bustamante, State Bar No. 036044
Morgan L. Bigelow, State Bar No. 037516
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@leblawyers.com
        clara@leblawyers.com
        morgan@leblawyers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| William F. Forrest, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> Keith Spizzirri, *et al*., <br><br> Defendants. | No. CV-21-01688-PHX-GMS <br><br> **PLAINTIFFS' MOTION AND AFFIDAVIT FOR ENTRY OF JUDGMENT BY DEFAULT AND WITHOUT HEARING** |

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiffs, William F. Forrest, *et al*. (collectively "Plaintiffs"), move for Judgment against the following Defendants: Keith and Miriam Spizzirri, Cynthia and Jason Moore, John and Debra De La Cruz, IntelliQuick Delivery, Inc., IntelliServe, LLC, Majik Leasing, LLC, and Majik Enterprises I, Inc.

Entry of the Judgment submitted herewith is appropriate under said Rule for the following reasons:

1.  Pursuant to Court Order (Docs. 92, 99), the Answer to the First Amended Complaint ("FAC") (Doc. 45) previously filed on behalf of Defendants against whom

relief is given in the Judgment submitted has been stricken and no Defendant is a minor or incompetent.

**2.** Defendants IntelliQuick Delivery, Inc., IntelliServe, LLC, Majik Leasing, LLC, and Majik Enterprises I, Inc. have failed to secure a licensed attorney and therefore may not appear in federal court. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 201-03 (1993). *See* Docs. 76, 88, 99. Because Defendants IntelliQuick Delivery, Inc., IntelliServe, LLC, Majik Leasing, LLC, and Majik Enterprises I, Inc. are not represented, Plaintiffs can seek a default judgment against them. *See United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993).

**3.** In addition, Plaintiffs are also entitled to prejudgment interest on the state law minimum wage and paid sick leave claims from the last date of each Plaintiff's employment until entry of Judgment. The prejudgment interest is owed because the amounts at issue are liquidated and required under A.R.S. § 23-364(G).

**4.** Plaintiffs' claims are for a sum certain and/or a sum which can by computation be made certain, and the Judgment submitted herewith is for money only and grants no other form of relief.

**5.** The Clerk has entered the Defaults of all Defendants against whom relief is given in the Judgment submitted herewith, and no less than ten (10) judicial days have elapsed since then. Docs. 93, 100.

This Motion is supported by the following Declaration.

| STATE OF ARIZONA | |
| --- | --- |
| | ss. |
| County of Maricopa | |

NICHOLAS J. ENOCH, being first duly sworn upon his oath, deposes and says:

1.    Affiant is the attorney for Plaintiffs.

2.    The amounts stated herein, and in the Judgment submitted herewith, are due and owing as of this date; all just and lawful setoffs, payment and credits have been allowed:

| | |
|---|---|
| Principal | $1,040,263.15 |
| Reasonable attorney fees | $738,902.63 |
| Accrued costs | $7,315.44 |
| TOTAL | $1,786,481.10 |

with interest on the principal at 3.65% per annum from the date of entry of judgment, until paid, together with interest on the costs and reasonable attorney's fees at 3.65% per annum from the date hereof until paid, together with after-accruing taxable costs. The interest referenced herein is pursuant to 28 U.S.C. § 1961(a). *See also Spain v. Mountanos*, 690 F.2d 742, 747–48 (9th Cir. 1982).

3.    The exhibits attached hereto or to the Original and First Amended Complaint are the original or true copies of the documents supporting the claim.

4.    Attorneys' fees have been requested in the Original and First Amended Complaint and are awardable pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G). The amount of attorney's fees provided for in the Judgment submitted herewith is reasonable under all the circumstances of this case.

///

///

Respectfully submitted this 17th day of October, 2025.

LUBIN, ENOCH & BUSTAMANTE, P.C.

/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiffs

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RULE 55(B)(1) MOTION FOR ENTRY OF DEFAULT

## I.   INTRODUCTION

Pursuant to Rule 55(b)(2), Fed. R. Civ. P., Plaintiffs, William F. Forrest, *et al.*, ("Plaintiffs"), by and through undersigned counsel, hereby submit this Memorandum of Points and Authorities in support of their Motion for Entry of Default Judgment against Defendants.

As this Memorandum, the Sum Certain Declaration of Morgan L. Bigelow (*see* attached **Exhibit A)**, and the accompanying declarations by the Plaintiffs (**Exhibit B**: Declaration of William F. Forrest; **Exhibit C**: Declaration of Wendy Smith; **Exhibit D**: Declaration of Michelle Martinez; **Exhibit E:** Declaration of Jodi Miller; and **Exhibit F:** Declaration of Kenneth Turner) demonstrate, Plaintiffs are entitled to relief against Defendants in the total amount of $1,040,263.15.  Interest on the unpaid wages is also requested from the date of the entry of judgment, and prejudgment interest on Plaintiffs' state law claims is required because the amounts at stake are both liquidated and warranted pursuant to A.R.S. § 23-364(G). This figure does not include the attorneys' fees, costs, and expenses incurred in this matter. The amount of attorneys' fees and costs incurred in this

matter, up to and including October 17, 2025 is $746,218.07 (of which $235,193.10 is attorneys' fees to Lubin, Enoch & Bustamante, PC, $500,000 is attorneys' fees to Haynes Boone, $3,709.53 is computerized legal charges recoverable as fees, and $7,315.44 is costs). *See* **Exhibits G and H** (Declaration of Nicholas J. Enoch and Declaration of Daniel L. Geyser, respectively).

The reasons for the Motion are: (1) that a proper and effective default has been entered against Defendants; (2) that Plaintiffs' claims against Defendants are for a sum certain or a sum which can, by computation, be made certain, as reflected in Plaintiffs' Original and First Amended Complaint and the Sum Certain Declaration of Morgan L. Bigelow; and (3) the attorneys' fees and costs prayed for in the Complaint are reasonable, recoverable by law, and established by declaration. A proposed order in the form of an Entry of Default Judgment is also lodged herewith as **Exhibit I.**

## II. ARGUMENT

### A.    <u>A Proper and Effective Default Has Been Entered Against Defendants</u>.

On July 9, 2021, Plaintiffs filed their six-count wage and hour lawsuit in Maricopa County Superior Court (Doc. 1-3, p. 4) against Defendants Keith and Miriam Spizzirri, Ken and Carole Maring,[1] Cynthia and Jason Moore, John and Debra De La Cruz, IntelliQuick Delivery, Inc., Majik Leasing, LLC, and Majik Enterprises I, Inc. Defendants timely removed the case to this Court on October 1, 2021. Doc. 1. Represented by counsel, on October 15, 2021, Defendants filed their MOTION TO COMPEL ARBITRATION

---

[1] The Marings have since been dismissed from the action. Doc. 83.

1    AND DISMISS ACTION and, in so doing, "request[ed] dismissal of this action and an

2    order that the Parties proceed with the arbitration of their disputes." *See* Doc. 18, p. 3.  As

3    a consequence of the Defendants' court filing, each of the five (5) Plaintiffs promptly

4    initiated arbitration with the American Arbitration Association ("AAA") including, *inter*

5    *alia*, fully paying their required non-refundable filing fees.

6         On June 17, 2022, this Court, citing to binding Ninth Circuit precedent, granted

7    the Defendants' motion and "exercise[d] its discretion to dismiss this action." *See* Doc.

8    25, p.  2.  Plaintiffs timely appealed that ruling to the Ninth Circuit.  During this same

9    period of time, the Parties were proceeding with the five (5) AAA arbitrations.

10        On September 20, 2022, the Plaintiffs/Appellants filed their Opening Brief in the

11   Ninth Circuit, and on November 18, 2022, the Defendants/Appellees filed their

12   Answering Brief.  *Forrest v. Spizzirri,* No. 22-16051, Docs. 7, 16.  The

13   Plaintiffs/Appellants filed their Reply Brief on December 9, 2022, *id.* at Doc. 21, and on

14   March 16, 2023, the Ninth Circuit issued its Opinion in which it affirmed this Court's

15   earlier ruling.  *Forrest v. Spizzirri*, 62 F.4th 1201 (9th Cir. 2023).  Simultaneously,

16   Defendants/Appellees refused to pay the required fees for three (3) of the five (5)

17   arbitrations[1] *to wit, Wendy Smith v. Keith Spizzirri, et al.*, AAA Case Number 01-21-

18

19   [1]  Defendants settled with Forrest and Miller on June 4, 2023 and the AAA
     administratively closed both of those cases on January 28, 2024.  Notwithstanding the

20   settlements, the Defendants never paid Forrest and Miller a single penny of the agreed
     upon sums and, as such, there is currently pending in Maricopa County Superior Court a

21   breach of contract action entitled *William F. Forrest, et al.* v. *Keith Spizzirri, et al.*, Case
     No. CV2024-013776.  This state court litigation was mentioned in the parties' Joint

22   Report dated September 11, 2024. Doc. 51, p. 10.

0017-0207, *Michelle Martinez v. Keith Spizzirri, et al.*, AAA Case Number 01-21-0017-1075 and *Kenneth Turner v. Keith Spizzirri, et al.*, AAA Case Number 01-21-0017-1075. As a result of the Defendants' failure to pay the required fees, all three (3) arbitrations were terminated by the AAA during the second quarter of 2023, *id.*

Represented by the undersigned and by Daniel L. Geyser of Haynes Boone, on June 14, 2023, Plaintiffs Smith, Martinez and Turner filed their Petition for a writ of certiorari to the United State Supreme Court ("SCOTUS"). After Plaintiffs prevailed and SCOTUS issued its decision, on June 25, 2024, the Ninth Circuit Court of Appeals issued a Mandate remanding the matter to the district court for further proceedings. Doc. 34. On July 12, 2024, the Clerk of the District Court reopened the case (Doc. 39), and on July 26, 2024, Plaintiffs filed their First Amended Complaint ("FAC"), adding IntelliServe, LLC as a defendant. Doc. 41.    Defendants answered the FAC on August 23, 2024. Doc. 45.

The Parties submitted their Joint Report on September 11, 2024 (Doc. 51), and on September 16, 2024, the Court issued its Case Management Order (Doc. 54). Apart from Defendant Ken Maring, no other defendants appeared for their scheduled depositions and none of the defendants responded to Plaintiffs' discovery requests, served in December 2024. After a telephonic conference with the parties, the Court ordered Defendants to fully and completely answer the overdue written discovery and supplement their disclosure statement by February 11, 2025. Doc. 61. On February 11, 2025, Defendants' counsel of record moved to withdraw from the case (Doc. 67), which was granted on April 4, 2025. Doc. 76.

1    The Court ordered Defendants IntelliQuick Delivery, Inc., Majik Leasing, LLC, and

2    Majik Enterprises I, Inc. to retain a lawyer and file a Notice of Appearance by May 6, 2025,

3    and ordered the remaining individual defendants to retain counsel by May 5, 2025. *Id.* The

4    Court further warned Defendants that failure to comply with the Court's Orders may result

5    in their Answer to the FAC being stricken and Plaintiffs being permitted to proceed by

6    default. Plaintiffs moved the Court for sanctions for Defendants' failure to comply with the

7    Court's Orders, participate in discovery, and appear for their depositions. Doc. 78. The

8    Court granted Plaintiffs' first Motion for Sanctions (Doc. 59) and again ordered

9    Defendants, other than IntelliServe, to retain counsel (Doc. 88). Defendants failed to secure

10   counsel or otherwise comply with the Court's Order, dated May 30, 2025, resulting in the

11   Court's Order (Doc. 92) to strike the Answer of Defendants IntelliQuick Delivery, Inc.,

12   Majik Leasing, LLC, and Majik Enterprises I, Inc., Keith Spizzirri and Miriam Spizzirri,

13   Cynthia Moore and Jason Moore, John De La Cruz and Debra De La Cruz  (Doc. 45) and

14   the Clerk's Entry of Default against the same defendants (Doc. 93).

15   In response to a motion by Plaintiffs, on July 28, 2025, the Court ordered

16   IntelliServe, LLC to retain counsel. Doc. 96. On August 19, 2025, the Court issued an

17   Order (Doc. 99) striking Defendant IntelliServe, LLC's Answer (Doc. 45) and entering

18   default against it (Doc. 100).

19   The ten (10) day period given to all Defendants to plead has now expired.  Thus, the

20   default has become effective under Rule 55(b).  Plaintiffs file the instant Motion for Entry

21   of Default Judgment.

22   **B.    Factual Background**

8

Courts are instructed to take all facts in the complaint as true following entry of default except for those relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 918 (9th Cir. 1987); *Deckers Outdoor Corp. v. Mojofit LLC*, No. 2:20-cv-08638-SVW-MRW, 2021 U.S. Dist. LEXIS 77296 (C.D. Cal. Mar. 30, 2021.) Thus, it is established that Plaintiffs were drivers formerly employed by Defendants. Doc. 41 ¶¶ 45, 48, 51, 55, 58. Plaintiffs were employees within the meaning of the Fair Labor Standards Act ("FLSA") and under the Arizona Minimum Wage Act ("AMWA"). *Id.* ¶ 10. All named Defendants constitute joint employers of Plaintiffs under the FLSA and AMWA. All joint employers are individually responsible for compliance with the FLSA. *Id.* ¶ 42.

Defendants employed Plaintiff William Forrest from about April 2012 through June 2020 as a route driver. *Id.* ¶ 45. Forrest typically worked twelve (12) to thirteen (13) hours per day, five (5) days per week. *Id.* ¶ 46. Forrest paid out of pocket daily to gas up the vehicle he leased from Defendants for $200 per week; these business expenses were not reimbursed to him. *Id.* ¶¶ 45, 47. Forrest was compensated a daily rate of $213.50 until his wages were reduced by 7.5% in May 2020. *Id.* ¶ 63.

Defendants employed Plaintiff Wendy Smith from about October 2012 through July 2016 and again from about September 2018 to September 2020 as a route driver. *Id.* ¶ 51. Smith worked fourteen (14) to sixteen (16) hour days, five (5) days per week, and seven (7) hours on Saturday. *Id.* ¶ 53. Smith used her personal vehicle to carry out her work. *Id.* ¶ 52. She paid out of pocket to maintain and gas up her vehicle on which she

put, on average, 600 miles per week.[2] These business expenses were not reimbursed to her. *Id.* ¶ 54. Smith was compensated a daily rate of $265 until her wages were reduced by 7.5% in May 2020. *Id.* ¶ 63.

Defendants employed Plaintiff Jodi Miller from about November 2018 through September 25, 2020, as a route driver. *Id.* ¶ 48; Ex. E hereto at ¶ 3. Miller worked Monday through Friday for approximately fourteen (14) hours per day. *Id.* ¶¶ 48-49. She also worked a Saturday route and occasionally covered others' shift on Sundays. *Id.* ¶ 49. She paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week.[3] These business expenses were not reimbursed to her. *Id.* ¶ 50. Miller was paid $223 per day for her weekday route. *Id.* ¶ 63. In May 2020, her daily rate was reduced by 7.5%. *Id.* ¶ 63.

Defendants employed Plaintiff Michelle Martinez from about June 2014 through January 10, 2023, as a route driver. *Id.* ¶ 55; Ex. D hereto at ¶ 3. While driving the Lab Corps routes, Martinez worked Monday through Friday, eleven (11) to twelve (12) hours per week day plus a route to Florence on Saturdays. Doc. 41 ¶ 56. She worked on average sixty-five (65) hours per week. *Id.* During this time, she drove approximately 1,200 miles per week. *Id.* ¶ 57. Then, beginning approximately mid-2018, she took over a Phoenix area route for Garcia labs, working approximately fifty (50) hours per week. *Id.*

---

[2] Smith's Declaration (Exhibit C hereto) corrects an error in the FAC. Smith drove on average 600 miles per day, not per week.
[3] Miller's Declaration (Exhibit E hereto) corrects an error in the FAC. Miller drove on average 2,600 per week through May 2020 and approximately 2,500 miles per week for the remainder of her employment.

¶ 56.  On this new route, she drove, on average, 750 miles per week.  *Id.* ¶ 57. She paid

out of pocket to maintain and gas up her vehicle. These business expenses were not

reimbursed to her. *Id.* ¶ 57. Martinez was paid $183 per day for her weekday route.  *Id.* ¶

63. In May 2020, her daily rate was reduced by 7.5%.  *Id.* ¶ 63.

Defendants employed Plaintiff Kenneth Turner from about March 2014 through

February 11, 2023, as a freight/utility driver. *Id.* ¶ 58; Ex. F hereto at ¶ 3. Turner worked

anywhere from eight (8) to eleven (11) hours per day, five (5) and sometimes six (6) days

per week. *Id.* ¶ 60. Turner was paid $150 per day until May 2020 when his daily rate was

reduced by 7.5%.  *Id.* ¶ 63.

Defendants deducted between $35 to $40 in fees per week for work expenses such

as uniform laundering, secondary car insurance, required scanner rental and software, and

paycheck processing. *Id.* ¶ 62.

When accounting for unreimbursed business expenses, Plaintiffs were paid under

the minimum wage. Defendants failed to compensate Plaintiffs overtime compensation for

hours worked over forty (40) in a work week.

Plaintiffs were not permitted to take time off when sick, and, when they did so, they

were not paid for the time. Plaintiffs Forrest, Miller, Smith and Turner requested and were

denied paid sick time. *Id.* ¶¶ 98-101. When Plaintiffs took unauthorized time off, they were

often threatened with termination.

Defendants willfully violated minimum wage, overtime, and paid sick time laws

even after being sued for the same issues several years prior in a lawsuit that resulted in a

court-approved multi-million dollar settlement. Doc. 41 ¶ 72. *See Collinge v. Intelliquick Delivery, Inc.*, No. CV-12-00824-PHX-JWS, Docket No. 605 (D. Ariz. 2013).

**C.    The Eitel factors weigh in favor of granting default judgment.**

The entry of default judgment falls within the broad discretion of the court to effectuate justice. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). In this circuit, courts consider the following non-exhaustive list of factors when determining whether to enter judgment by default:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also, NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). Here, the *Eitel* factors support entry of default judgment here.

First, Plaintiffs will suffer prejudice if default judgment is not entered. Defendants' Answer to their First Amended Complaint has been stricken due to their lack of participation in this lawsuit. Plaintiffs are left with no other means to obtain redress for the harms Defendants perpetrated on them. Default judgment would vindicate Plaintiffs' statutory rights and discourage the abusive tactics used by Defendants to take advantage of vulnerable employees. The prejudice factor weighs heavily in favor of granting default judgment for Plaintiffs.

1        Next, Plaintiffs' substantive claims are meritorious, and their First Amended

2   Complaint was sufficient. Plaintiffs address these factors together because they are

3   interrelated questions. *See e.g., NewGen,* 840 F.3d at 616. Applying the Rule 8(a), Fed. R.

4   Civ. P. standard requiring a well-pled complaint to contain sufficient factual allegations to

5   plausibly allow a reasonable inference of entitlement to relief, and assuming the veracity

6   of those facts, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), Plaintiffs have proven each

7   element of their claims for relief.

8        As to Plaintiffs' claims under the FLSA for overtime wages and minimum wage,

9   they have sufficiently pled (1) that they were employed during the relevant period; (2) they

10  were covered by the FLSA; and (3) Defendants failed to pay Plaintiffs both the minimum

11  wage and overtime. 29 U.S.C. § 207(a); *Quinoñez v. Reliable Auto Glass, LLC*, No. CV-

12  12-000452-PHX-GMS, 2012 U.S. Dist. LEXIS 95624 (D. Ariz. July 11, 2012). The FLSA

13  applies on an individual basis to employees "engaged in commerce or in the production of

14  goods for commerce" and on an enterprise-wide basis to all employees "employed in an

15  enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C.

16  §§ 206(a), 207(a)(1).   Plaintiffs state a meritorious claim for unpaid minimum wages

17  because their well-pleaded facts, accepted as true, demonstrated that Defendants violated

18  both the minimum wage and overtime provisions by paying a daily rate regardless of the

19  number of hours they worked and not reimbursing them for significant car and other

20  business-related expenses so that their wages were free and clear.

21       Plaintiffs have also pleaded factual allegations that meet the necessary requirements

22  for a meritorious claim under the AMWA.  *See* A.R.S. § 23-362, *et. seq.* Plaintiffs were

1    employees as defined under A.R.S. § 23-362(A), and Defendants Keith and Miriam

2    Spizzirri, Cynthia and Jason Moore, John and Debra De La Cruz, IntelliQuick Delivery,

3    Inc., IntelliServe, LLC, Majik Leasing, LLC, and Majik Enterprises I, Inc. were employers

4    as defined under A.R.S. § 23-362(B).  *See* Doc. 45 ¶¶ 10, 22, 28, 31, 37, 42.  Defendants

5    paid Plaintiffs less than the minimum wage. *Id.* ¶ 70.  Defendants acted willfully to evade

6    the FLSA, the AMWA and the Fair Wages and Healthy Families Act ("the Act"). *Id.* ¶ 72.

7        The sum of money at stake poses no concern to this Court's entry of default

8    judgment.  The fourth Eitel factor balances "the amount of money at stake in relation to the

9    seriousness of the [d]efendant's conduct." *PepsiCo Inc. v. Calif. Security Cans.*, 283 F.

10   Supp. 2d 1172, 1176; *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.

11   D. Cal 2010).   Courts have granted or affirmed default judgment where the amount

12   requested was significantly greater than that sought by the Plaintiffs here. *E.g., NewGen*,

13   840 F.3d at 617 (affirming $1.4 million default judgment).   Plaintiffs' request for

14   $1,040,263.15 plus attorneys' fees is reasonable considering Defendants' behavior.

15   Defendants have paid Plaintiffs at an hourly rate that shocks the conscience. Federal and

16   state statutes authorize liquidated damages for these wage violations to compensate the

17   employee, 29 U.S.C. § 216(b) (double damages); A.R.S. § 23-364(G) (treble damages).

18   Nothing in Defendants' conduct demonstrates good faith. The $1,040,263.15 requested by

19   Plaintiffs is commensurate with the law and the misconduct, and thus, this factor favors

20   default judgment for Plaintiffs.

21

22

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. Here, Defendants' failure to respond leaves little possibility of dispute over the material facts. Thus, this factor weighs in favor of default.

As to the sixth *Eitel* factor, Defendants have not shown excusable neglect. Defendants have repeatedly been in email contact with undersigned counsel and yet refuse to participate in these judicial proceedings. Therefore, this factor weighs in favor of entering default judgment.

Finally, although cases should be decided on the merits where possible, a party's persistent refusal to participate in the proceedings eliminates a court's ability to render a decision on the merits. *Cf. Allen v. Exxon Corp.*, 102 F.3d 429, 433 (9th Cir. 1996) (policy in favor of decisions on the merits "lends little support" where a party refuses to provide information necessary to resolve claims). Thus, denial of default judgment in the circumstances where a party fails to appear in or respond to an action, as here, does not advance the stated policy against default judgments. A decision on the merits in this matter is impractical if not impossible.

**D.    A Hearing is Not Required to Resolve the Amount of Damages and Plaintiffs Seek a Sum Certain or a Sum Which Can, by Computation, Be Made Certain.**

The AMWA provides that employers must pay employees no less than the minimum wage. During the relevant time frame, the minimum wage was $10.50/hr in 2018, $11.00/hr in 2019, $12.00/hr in 2020, $12.15/hr in 2021, $12.80/hr in 2022 and $13.85/hr in 2023. Any employer who violates the AMWA "*shall* be required to pay the employee the balance of the wages owed, including interest thereon, and an additional amount equal

1    to twice the underpaid wages." A.R.S. § 23-364 (G) (emphasis added). In other words, an

2    offending employer is liable for treble damages and interest on the unpaid or underpaid

3    wages. Accordingly, the imposition of treble damages under A.R.S. § 23-364(G) on unpaid

4    minimum wages is appropriate here.

5         The FLSA provides employers must pay hourly employees overtime compensation

6    at a rate of one and one-half times their regular rate of pay for work performed over forty

7    (40) hours in a seven-day period. At no time during Plaintiffs' employment did Defendants

8    make a good-faith effort to comply with the FLSA. Therefore, Defendants' acts and

9    omissions constitute willful and intentional violations of the FLSA. *See* 29 U.S.C. §§

10   207(a)(1), 215(a)(2), 255(a). Plaintiffs are entitled to "unpaid overtime compensation[] …

11   and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Further,

12   Plaintiffs incurred costs and attorney's fees to which they are entitled reimbursement as a

13   direct and proximate result of Defendants' willful and intentional violations of the FLSA.

14   *See* 29 U.S.C. §216(b).

15        Defendants employed Plaintiff Forrest from about April 2012 through June 2020

16   as a route driver. Doc. 41 ¶ 45. Forrest typically worked twelve (12) to thirteen (13) hours

17   per day, five (5) days per week for an average of 57.5 hours per week. Doc. 41. ¶ 46;

18   Exhibit B hereto at ¶ 5. Forrest paid out of pocket daily to gas up the vehicle he leased

19   from Defendants; these business expenses were not reimbursed to him. Doc. 41. ¶¶ 45,

20   47. In addition, Defendants deducted $236.81 in fees per week for work expenses such as

21   the car lease, uniform laundering, secondary car insurance, required scanner rental and

22   software, and paycheck processing. *Id.* ¶ 62; Ex. B ¶ 7. Forrest was compensated a daily

rate of $213.50 until his wages were reduced by 7.5% to $194.25 in May 2020. Doc. 41¶ 63; Ex. B ¶ 8.  Forrest's damage calculations are included in Attachment 1 to the Sum Certain Declaration of Morgan L. Bigelow (Exhibit A hereto).

Forrest should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020. Forrest also should have been paid an additional half of his regular rate, or at least half the minimum wage rate, for each hour after the first forty (40) in each work week.

Under the Second Claim for Relief, violation of the AMWA, Forrest is owed $109.25 in minimum wages. Forrest is entitled to treble damages on his minimum wage claim, raising the amount owed to him to $327.75. *See* Ex. A, Attach. 1.

During the relevant time frame, Forrest worked, on average, 17.5 hours of overtime per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207, Forrest is entitled to receive compensation at a rate of one and one-half times the regular rate for all hours worked for Defendants in excess of forty hours in any work week.

Under the Third Claim for Relief, violation of the FLSA's Overtime Provision, 29 U.S.C. § 207(a)(1), *et seq*., Forrest is owed overtime wages equaling $10,969.43. Forrest is entitled to double damages, raising his overtime damages to $21,938.86 and to liquidated damages, attorneys' fees and cost of the action pursuant to 29 U.S.C. § 216(b). *See* Ex. A, Attach. 1.

Under the Fourth Claim for Relief, violation of the Earned Paid Sick Time Act, A.R.S. § 23-371, *et. seq*, Forrest is owed forty (40) hours of accrued PST per year for 2018,

1    2019, and 2020, which is equivalent to $1,473.60. Pursuant to § 23-364(G), this amount

2    should be trebled to $4,420.80. *See* Ex. A, Attach. 1.

3         Defendants employed Plaintiff Wendy Smith from about October 2012 through

4    July 2016 and again from about September 2018 to September 2020 as a route driver.

5    Doc. 41 ¶ 51. Smith worked fourteen (14) to sixteen (16) hour days, five (5) days per

6    week, and seven (7) hours on Saturday. *Id.* ¶ 53; Ex. C ¶ 5. Smith used her personal

7    vehicle to carry out her work.  Doc. 41 ¶ 52.  She paid out of pocket to maintain and gas

8    up her vehicle on which she put, on average, 600 miles per day. *Id.* ¶ 54; Ex. C ¶ 6. These

9    business expenses were not reimbursed to her. Doc. 41 ¶ 54. In addition, Defendants

10   deducted $35.81 in fees per week for work expenses such as uniform laundering,

11   secondary car insurance, required scanner rental and software, and paycheck processing.

12   *Id* ¶ 62; Ex. C ¶ 7. Smith was compensated a daily rate of $265 until her wages were

13   reduced by 7.5% to $245 per day in May 2020. Doc. 41 ¶ 63; Ex. C ¶ 8. Smith's damage

14   calculations are included in Attachment 2 to the Sum Certain Declaration of Morgan L.

15   Bigelow (Exhibit A hereto).

16        Smith should have been paid at least the minimum wage for all hours worked at the

17   rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020. Smith also

18   should have been paid an additional half of her regular rate, or at least half the minimum

19   wage rate, for each hour after the first forty (40) in each work week.

20         Under the Second Claim for Relief, violation of the AMWA, Smith is owed

21   $129,027.38 in minimum wages. Plaintiff is entitled to treble damages on her minimum

22   wage claim, raising the amount owed to her to $387,082.14. *See* Ex. A, Attach. 2.

1    During the relevant time frame, Smith worked, on average, 35 hours of overtime per

2    week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207,

3    Smith is entitled to receive compensation at a rate of one and one-half times the regular

4    rate for all hours worked for Defendants in excess of forty hours in any work week.

5    Under the Third Claim for Relief, violation of the FLSA's Overtime Provision, 29

6    U.S.C. § 207(a)(1), *et seq*., Smith is owed overtime wages equaling $20,405.70. Smith is

7    entitled to double damages, raising her overtime damages to $40,811.40 and to liquidated

8    damages, attorneys' fees and cost of the action pursuant to 29 U.S.C. § 216(b). *See* Ex. A,

9    Attach. 2.

10    Under the Fourth Claim for Relief, violation of the Earned Paid Sick Time Act,

11    A.R.S. § 23-371, *et. seq*, Smith is owed twenty-five (25) hours of accrued PST in 2018 and

12    forty (40) hours of accrued PST per year for 2019 and 2020, which is equivalent to

13    $1,182.50. Pursuant to § 23-364(G), this amount should be trebled to $3,547.50. *See* Ex.

14    A, Attach. 2.

15    Defendants employed Plaintiff Jodi Miller from about November 2018 through

16    September 25, 2020, as a route driver. Doc. 41 ¶ 48.   Between November 2018 and May

17    2020, Miller worked Monday through Friday for approximately fourteen (14) hours per

18    day. *Id.* ¶¶ 48-49. She also worked a weekly Saturday route for approximately seven (7)

19    hours and occasionally covered others' shifts on Sundays. *Id.* ¶ 49; Ex. E hereto at ¶ 5.

20    She paid out of pocket to maintain and gas up her vehicle on which she put, on average,

21    2,600 miles per week. These business expenses were not reimbursed to her. *Id.* ¶ 50; Ex.

22    E ¶ 7.  Miller was paid $243 per day for her weekday routes and $100 for her Saturday

route.  Doc. 41. ¶ 63; Ex. E ¶ 9. In May 2020, her daily rate was reduced by 7.5%.  Doc. 41. ¶ 63. Beginning in June 2020, Miller stopped working her Saturday route and her Idexx route, lowering her average weekly hours from seventy-seven (77) hours per week to seventy (70) hours per week. Ex. E ¶ 6. Her new daily rate was approximately $206 per day. *Id.* ¶ 9.   In addition, Defendants deducted $36.81 in fees per week for work expenses such as uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing. *Id* ¶ 8; Doc. 41 ¶ 62. Miller's damage calculations are included in Attachment 4 to the Sum Certain Declaration of Morgan L. Bigelow (Exhibit A hereto).

Miller should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020. Miller also should have been paid an additional half of her regular rate, or at least half the minimum wage rate, for each hour after the first forty (40) in each work week.

Under the Second Claim for Relief, violation of the AMWA, Miller is owed $105,098.06 in minimum wages. Miller is entitled to treble damages on her minimum wage claim, raising the amount owed to her to $315,294.18. *See* Ex. A, Attach. 4.

During the relevant time frame, Miller worked, on average, thirty-seven (37) hours of overtime per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207*,* Miller is entitled to receive compensation at a rate of one and one-half times the regular rate for all hours worked for Defendants in excess of forty hours in any work week.

1   Under the Third Claim for Relief, violation of the FLSA's Overtime Provision, 29

2   U.S.C. § 207(a)(1), *et seq*., Miller is owed overtime wages equaling $18,942.99. Miller is

3   entitled to double damages, raising her overtime damages to $37,885.98 and to liquidated

4   damages, attorneys' fees and cost of the action pursuant to 29 U.S.C. § 216(b). *See* Ex. A,

5   Attach. 4.

6   Under the Fourth Claim for Relief, violation of the Earned Paid Sick Time Act,

7   A.R.S. § 23-371, *et. seq*, Miller is owed eight (8) hours of accrued PST in 2018 and forty

8   (40) hours of accrued PST per year for 2019 and 2020, which is equivalent to $1,004.00.

9   Pursuant to § 23-364(G), this amount should be trebled to $3,012.00. *See* Ex. A, Attach. 4.

10  Defendants employed Plaintiff Michelle Martinez from on or about June 2014

11  through January 10, 2023, as a route driver. Doc. 41 ¶ 55; Ex. D ¶ 3.  During the relevant

12  time frame, Martinez worked Monday through Friday for approximately fifty (50) hours

13  per week. *Id.* ¶ 56.  She paid out of pocket to maintain and gas up her vehicle on which

14  she put, on average, 750 miles per week between July 2018 and July 2021 and an average

15  of 1,050 miles per week thereafter. *Id.*  ¶ 57 and Ex. D ¶ 4. These business expenses were

16  not reimbursed to her. Doc. 41 ¶ 57. In addition, Defendants deducted $36.81 in fees per

17  week for work expenses such as uniform laundering, secondary car insurance, required

18  scanner rental and software, and paycheck processing. *Id.* ¶ 62; Ex. D ¶ 5. Martinez was

19  paid $183 per day for her weekday route.  Doc. 41 ¶ 63. In May 2020, her daily rate was

20  reduced by 7.5% to approximately $169 per day. *Id.* ¶ 63; Ex. D ¶ 7.  Martinez's damage

21  calculations are included in Attachment 3 to the Sum Certain Declaration of Morgan L.

22  Bigelow (Exhibit A hereto).

1    Martinez should have been paid at least the minimum wage for all hours worked at

2    the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, $12.00/hr in 2020, $12.15/hr in

3    2021, $12.80/hr in 2022 and $13.85/hr in 2023. Martinez also should have been paid an

4    additional half of her regular rate, or at least half the minimum wage rate, for each hour

5    after the first forty (40) in each work week.

6    Under the Second Claim for Relief, violation of the AMWA, Martinez is owed

7    $48,859.24 in minimum wages. Plaintiff is entitled to treble damages on her minimum

8    wage claim, raising the amount owed to her to $146,577.73. *See* Ex. A, Attach. 3.

9    During the relevant time frame, Martinez worked eight and three quarters (8.75)

10   hours of overtime per week and was not paid for these compensable hours. Under the

11   FLSA, 29 U.S.C. § 207, Martinez is entitled to receive compensation at a rate of one and

12   one-half times the regular rate for all hours worked for Defendants in excess of forty hours

13   in any work week.

14   Under the Third Claim for Relief, violation of the FLSA's Overtime Provision, 29

15   U.S.C. § 207(a)(1), *et seq*., Martinez is owed overtime wages equaling $15,325.08.

16   Martinez is entitled to double damages, raising her overtime damages to $30,650.16 and to

17   liquidated damages, attorneys' fees and cost of the action pursuant to 29 U.S.C. § 216(b).

18   *See* Ex. A, Attach. 3.

19   Under the Fourth Claim for Relief, violation of the Earned Paid Sick Time Act,

20   A.R.S. § 23-371, *et. seq*, Martinez is owed forty (40) hours of accrued PST per year from

21   2018 to 2022 and is owed two and one half (2.5) hours of accrued PST for 2023, which is

22

1  equivalent to $2,372.74. Pursuant to § 23-364(G), this amount should be trebled to

2  $7,118.22. *See* Ex. A, Attach. 3.

3      Defendants employed Plaintiff Kenneth Turner from about March 2014 through

4  February 11, 2023, as a freight/utility driver. Doc. 41 ¶ 58.  Turner worked anywhere

5  from eight (8) to eleven (11) hours per day, five (5) and sometimes six (6) days per week.

6  *Id.* ¶ 60.  Turner was paid $150 per day until May 2020 when his daily rate was reduced

7  by 7.5% to approximately $138.75 per day.  *Id.* ¶ 63; Ex. F ¶ 6.  Defendants deducted

8  $36.81 in fees per week for work expenses such as uniform laundering, secondary car

9  insurance, required scanner rental and software, and paycheck processing. Doc. 41 ¶ 62;

10 Ex. F ¶ 10. Turner's damage calculations are included in Attachment 5 to the Sum

11 Certain Declaration of Morgan L. Bigelow (Exhibit A hereto).

12     Turner should have been paid at least the minimum wage for all hours worked at the

13 rate of at least $10.50/hr in 2018, $11.00/hr in 2019, $12.00/hr in 2020, $12.15/hr in 2021,

14 $12.80/hr in 2022 and $13.85/hr in 2023. Turner also should have been paid an additional

15 half of his regular rate, or at least half the minimum wage rate, for each hour after the first

16 forty (40) in each work week.

17     Under the Second Claim for Relief, violation of the AMWA, Turner is owed

18 $845.20 in minimum wages. Turner is entitled to treble damages on his minimum wage

19 claim, raising the amount owed to him to $2,535.60. *See* Ex. A, Attach. 5.

20     During the relevant time frame, Turner worked, on average, ten (10) hours of

21 overtime per week and was not paid for these compensable hours. Under the FLSA, 29

22 U.S.C. § 207, Turner is entitled to receive compensation at a rate of one and one-half times

the regular rate for all hours worked for Defendants in excess of forty (40) hours in any work week.

Under the Third Claim for Relief, violation of the FLSA's Overtime Provision, 29 U.S.C. § 207(a)(1), *et seq.*, Turner is owed overtime wages equaling $14,027.71. Turner is entitled to double damages, raising his overtime damages to $28,055.42 and to liquidated damages, attorneys' fees and cost of the action pursuant to 29 U.S.C. § 216(b). *See* Ex. A, Attach. 5.

Under the Fourth Claim for Relief, violation of the Earned Paid Sick Time Act, A.R.S. § 23-371, *et. seq*, Turner is owed forty (40) hours of accrued PST per year from 2018 to 2022 and is owed seventeen (17) hours for 2023, which is equivalent to $3,668.47. Pursuant to § 23-364(G), this amount should be trebled to $11,005.41. *See* Ex. A, Attach. 5.

Any claim for relief under the FLSA's minimum wage provision is duplicative to Plaintiffs' claim under the AMWA; therefore, their recovery under Counts 2, 3 and 4 will make Plaintiffs whole.

The amounts due under the above-mentioned counts are sums certain under Rule 55(b). Interest (at the rate of 3.65% per annum) on the unpaid wages is also requested from the date of judgment through the time Defendants make full payment. Prejudgment interest is also warranted.

**E.**     <u>**The Attorneys' Fees and Costs Prayed for in the Complaint and Requested in the Motion Are Recoverable by Law, Reasonable, and Established by Declaration.**</u>

1    Plaintiffs prayed in the Complaint for their attorneys' fees and costs pursuant to 29

2    U.S.C. § 216(b) and A.R.S. § 23-364(G). Plaintiffs are the "successful party" and the

3    "prevailing plaintiffs" for purposes of these statutes, and they are therefore entitled to their

4    reasonable attorneys' fees and costs.

5    **1.    Plaintiffs are entitled to the requested attorneys' fees.**

6    Under both A.R.S. § 23-364(G) and 29 U.S.C. § 216(b), Plaintiffs are entitled to

7    their reasonable attorneys' fees. The services of legal assistants and law clerks are properly

8    included in attorney fee applications and awards. *See Ahwatukee Custom Estates Mgmt.*

9    *Ass'n v. Bach*, 193 Ariz. 401, 403, 973 P.2d 106, 108, ¶ 9 (1999). Computerized legal fees

10   may also be included.  *Id*., 193 Ariz. at 403-04, 973 P.2d at 108-09, ¶ 10.[4]

11   The Declaration of Nicholas J. Enoch, attached hereto as **Exhibit G,** includes as

12   Attachment 1, a detailed statement of our firm's attorneys' fees incurred by Plaintiffs in

13   this matter. The Declaration further establishes the reasonableness of such fees, including

14   the reasonableness of the billable rates charged.  The Declaration is hereby incorporated

15   by this reference.

16   The billing rates for each individual attorney and professional were established by

17   Lubin, Enoch and Bustamante, P.C. by taking into account each professional's education,

18   experience, and training.  They are also in line with, if not less than, fee awards issued in

19

20   [4] Plaintiffs are also entitled to and have been awarded fees in this matter by the Court as
     the result of Defendants' bad faith in pursuing arbitration. Doc. 88. To avoid confusion,
21   duplication and redundancy, rather than file a separate affidavit with backup support,
     knowing the instant filing would soon follow, the instant filing encompasses all attorneys'
22   fees and costs in connection to this matter.

recent wage and hour cases.  *See* Order and Judgment Certifying the Settlement Class and

Granting Plaintiffs' Motion for Final Approval of Collective and Class Action Settlement

at 12, *Van Dusen et al., v. Swift Transportation co., Inc., et al.*, No. 2:10-cv-00899-JWS

(D. Ariz. Jan. 22, 2020), ECF No. 1158 (approving the partner billing rates of between

$625 and $825 per hour, associate attorney billing rates between $295 and $405 per hour,

and paralegals and law clerk billing rates between $190 and $200 per hour, in case alleging

violation of inter alia, the FLSA); *Collinge v. Intelliquick Delivery, Inc.*, 2014 U.S. Dist.

LEXIS 78129, 8-10, 2014 WL 2569157 (D. Ariz. June 9, 2014) (approving partner billing

rate of $525/hour and associate rate of $300/hour for plaintiffs' counsel in action alleging,

inter alia, minimum wage violations). *See also, e.g., Garcia v. Tyson Foods, Inc.*, 2012

U.S. Dist. LEXIS 170177 at *29 (D. Kan. Nov. 29, 2012); *Kabore v. Anchor Staffing, Inc.*,

2012 U.S. Dist. LEXIS 149761 at **23-28 (D. Md. Oct. 17, 2012); *Figueroa v. Serenity*

*Luxury Living, LLC*, 2024 U.S. Dist. LEXIS 240630, *17 (D. Ariz., Oct. 25, 2024), *adopted*

*by* 2025 U.S. Dist. LEXIS 36148 (D. Ariz., Feb. 28, 2025).

The Declaration of Daniel L. Geyser, attached hereto as **Exhibit H,** includes as

Exhibits A and B thereto, a biography of attorney Daniel L. Geyser and a detailed statement

of his firm's attorneys' fees and expenses incurred by Plaintiffs in this matter. Haynes and

Boone, LLP incurred over $1,000,000 in fees and over $26,000 in costs. Though costs are

broadly defined, as a matter of billing judgment and to facilitate resolution of this piece,

Haynes and Boone, LLP is not seeking reimbursement of its costs and has heavily

discounted its hourly rates. The attached Declaration establishes the reasonableness of such

fees, including the reasonableness of the billable rates charged.  The Declaration is hereby incorporated by this reference.

It should be noted each Plaintiff and undersigned counsel entered into a contingent fee agreement, like the attached.  *See* **Exhibit J**.  According to the agreements, the undersigned would be entitled to 40% of the amount of recovery.  However, the fee agreement also provides that, in the event Plaintiffs recover a judgment, Plaintiffs would petition the Court for an award of attorneys' fees based on market rates.  That being said, undersigned counsel does not believe that, in the context of a minimum wage case, the terms of the engagement agreement are all that important or even relevant.  *See, e.g., United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("[T]he determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel.").  *Cf. Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Most individual plaintiffs do not have the necessary financial resources to litigate a minimum wage case like this.  Thus, the purpose of A.R.S. § 23-364(G) is to encourage private litigants, like Forrest and his co-litigants, to act as "private attorneys general" on behalf of enforcement of the AMWA.  *See Fegley*, 19 F.3d at 1134; *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 11 (D.C. Cir. 1984). The nearly two-thirds (⅔) of Arizonans who voted in favor of the AMWA clearly hoped to provide an adequate economic incentive for private attorneys to take cases like this one, and thereby to ensure that plaintiffs, like Forrest and his co-litigants, would be able to obtain competent legal representation for the

1   prosecution of legitimate claims of unpaid minimum wages. *Id. See also* A.R.S. § 23-

2   364(I) ("This article shall be liberally construed in favor of its purposes[.]").

3                   **2.      Plaintiffs are entitled to the requested costs.**

4            29 U.S.C.A. § 216(b) and A.R.S. § 23-364(G) requires the awarding of costs of suit

5   to a "prevailing plaintiff." Thus, as the "successful party" and the "prevailing plaintiff" in

6   this action, Plaintiffs are entitled to their costs in this action. Under A.R.S. § 12-332, such

7   costs include "costs of certified copies of papers or records" and "other disbursements that

8   are made or incurred pursuant to an order or agreement of the parties." The Declaration of

9   Nicholas J. Enoch, attached hereto as **Exhibit G,** includes in Attachment 1, a detailed

10  statement of costs incurred by Plaintiffs in this matter.

11  **III.    CONCLUSION**

12           **Wherefore**, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion

13  for Entry of Default Judgment and award judgments to the plaintiffs in the following

14  amounts:

15  - Plaintiff William Forrest:  $26,687.41;

16  - Plaintiff Wendy Smith: $431,441.04

17  - Plaintiff Michelle Martinez: $184,346.11

18  - Plaintiff Jodi Miller: $356,192.16

19  - Plaintiff Kenneth Turner: $41,596.43.

20  The grand total owed to Plaintiffs is $1,040,263.15. In addition, Plaintiffs request

21  $746,218.07 for attorneys' fees, costs, and expenses. Finally, Plaintiffs request interest at

22  the rate of 3.65% percent per annum on the entire award from the date judgment is entered

until paid in full. Plaintiffs are also entitled to prejudgment interest on their state law claims.

RESPECTFULLY SUBMITTED this 17th day of October, 2025.

LUBIN, ENOCH, & BUSTAMANTE, P.C.


/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiffs


**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October 2025, I electronically transmitted the attached Motion to the U.S. District Court Clerk's office using the CM/ECF System for filing, a copy being emailed this date to:

Keith & Miriam Spizzirri
keith@iqcando.com
spizzybee@outlook.com

Cynthia & Jason Moore
4221 S. Danyell Dr
Chandler, AZ 85249
cyndi.pecyntransport@gmail.com
cynmoore0305@gmail.com

John & Debra De La Cruz
36044 W. San Pedro Dr.
Maricopa, AZ 85138
delacruztma@aol.com

IntelliQuick Delivery, Inc.
IntelliServe, LLC
Majik Leasing, LLC
Majik Enterprises I, Inc.
keith@iqcando.com
spizzybee@outlook.com


/s/ Cristina Gallardo-Sanidad