# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William F. Forrest, et al., | No. CV-21-01688-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Keith Spizzirri, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion and Affidavit for Entry of Judgment by Default and Without Hearing. (Doc. 103). For the reasons below, Default Judgment is granted.

**I.   Background**

On July 26, 2024, Plaintiffs William F. Forrest ("Forrest"), Jodi Miller ("Miller"), Michelle Martinez ("Martinez"), Wendy Smith ("Smith"), and Kenneth Turner ("Turner") (collectively "Plaintiffs"), filed their First Amended Complaint (Doc. 41) asserting claims against Defendants for violations of federal and state minimum wage laws.

Plaintiffs allege Defendants Kenneth Maring ("Maring")[1], Cynthia Moore ("Moore"), Pat (Last Name Unknown) ("Pat"), John De La Cruz ("De La Cruz"), Keith Spizzirri ("Spizzirri") and companies, IntelliQuick Delivery, Inc., ("IntelliQuick"), IntelliServe, LLC ("IntelliServe"), Majik Leasing, LLC, and Majik Enterprises I, Inc., (hereinafter collectively referred to as "Defendants') knowingly misclassified Plaintiffs

---

[1] The Marings have since been dismissed from the action. Doc. 83.

and Class Members (collectively referred to as "Drivers," "Plaintiffs," and/or "Class Members" [2]), as independent contractors, failed to pay them the statutorily required minimum wages and overtime wages, and failed to provide earned paid sick time. The proposed Class includes route, on-demand and freight drivers who either use their own vehicle or lease one from Defendants to make deliveries and pick-ups for IntelliQuick. (*Id*.)

Plaintiff Forrest alleges from approximately April 2012 through June 2020, Defendants employed Forrest as a route driver who also occasionally delivered or picked up on-demand items. Forrest leased a vehicle from Defendants to complete his two routes, delivering and picking up specimen for Lab Corp in Flagstaff, Cottonwood, and Sedona and for Mayo Clinic. (*Id*. ¶ 45; Doc. 103, p. 16).

Forrest typically worked 12 to 13 hours per day, 5 days per week. Forrest paid out of pocket daily to gas up the vehicle and $200 per week was deducted from his pay to lease the vehicle. These business expenses were not reimbursed to him. (*Id*. ¶¶ 46-47; *Id*., p. 16-17).

Plaintiff Smith alleges from approximately October 2012 through July 2016 and again from September 2018 to September 2020, Defendants employed Smith as a route driver who occasionally delivered or picked up on-demand items. (*Id*. ¶ 51; *Id*., p.9).

Smith used her personal vehicle to complete her Bullhead City route, which included stops in Gold Valley, Kingman, Wickenberg, and Phoenix for LabCorps, Quest Diagnostics, Western Eye Clinic and Idexx. Smith also drove a Saturday route for Lab Corps. (*Id*. ¶ 52; *Id*.).

Smith worked 14 to 16-hour days, 5 days per week and 7 hours on Saturday. Smith paid out of pocket to maintain and gas up her vehicle on which she put, on average, 600 miles per week. These business expenses were not reimbursed to her. (*Id*. ¶¶ 53-54; *Id*.).

Plaintiff Miller alleges from approximately November 2018 through September 2020, that Miller was employed by Defendants as a route driver who occasionally delivered or picked up on-demand items. Miller used her personal vehicle to complete her Saturday

---

[2] Plaintiffs Forrest, Miller, Martinez, Smith and Turner consented to join wage claim collectively/Rule 23 State Law Class action lawsuit. (Docs. 41-1; 42)

"West Valley" route and her Monday through Friday route, which included stops in Havasu, Parker and Quartzsite for Idexx and Lab Corps. (*Id.* ¶48; Doc. 103, p. 10).

Miller worked 14 hours per day, 5 days per week. Miller paid out of pocket to maintain and gas up her vehicle and averaged 600 miles per week. These business expenses were not reimbursed to her. (*Id.* ¶¶ 49-50; *Id.*).

Plaintiff Martinez alleges from approximately June 2014 through January 10, 2023, Defendants employed Martinez as a route driver. (*Id.* ¶ 55; *Id.*; Doc. 103-4, ¶ 3).

Martinez used her personal vehicle to complete her routes. While IntelliQuick still had LabCorps' routes, Martinez worked 11 to 12-hour days driving a Phoenix metro area route during the day, a Maricopa route a night, and a Florence route on Saturdays. During this time period, Martinez worked, on average, 65 hours per week. Since mid-2018 through the present date (time of filing the Amended Complaint) Martinez drives three runs daily of a Phoenix-area route for Garcia Labs, working approximately 50 hours per week. (*Id.* ¶ 56; *Id.*).

While driving the Lab Corp route, Martinez put approximately 1200 miles per week on her vehicle and, on her new route, puts an average of 750 miles per week on her vehicle. These business expenses were not reimbursed to her. (*Id.* ¶ 57; *Id.*).

Plaintiff Turner alleges from about March of 2014 through February 11, 2023, Defendants employed Turner as a freight/utility driver. Turner was assigned a company vehicle daily. Turner was scheduled for an 8-hour shift during which he must be present and available for a pick-up or delivery anywhere in the state. Turner might receive an assignment at the end of a shift and was required to complete the delivery or pickup, with no additional compensation, regardless of how long it took to complete. Turner would work in the warehouse in his down time and was also a floater driver able to take over any route when needed. (*Id.* ¶ 58; Doc. 103, p. 11).

On occasions in which Turner accepted extra work for additional compensation after his shift, he was required to split the value of the job with the company along a 40/60 split (60 for the company) or 35/65 split if he used the company vehicle. Turner was not

reimbursed for the cost of the vehicle. (Doc. 41 59).

Turner worked anywhere from 8 to 11 hours per day, 5 and sometimes 6 days per week. (*Id*. ¶ 60).

Plaintiffs were paid a fixed daily rate regardless of the hours they worked to complete their routes. Plaintiffs allege that Defendants could and occasionally did add stops to their manifests with no additional compensation. (*Id*. ¶ 61).

Plaintiffs assert that in addition to covering work related car expenses, Plaintiffs additionally had to cover expenses for uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing. These fees range from $35 to $40 per week. When these paycheck deductions, car rental and vehicle maintenance costs are taken together, they bring Plaintiffs' hourly wage each week under the minimum wage. (*Id*. ¶ 62).

Plaintiffs allege at the start of the relevant pay period, Forrest earned $213.50 per day; Miller earned $223 per day; Smith earned $265 per day; Martinez earned $183 per day; and Turner earned $150 per day. In May 2020 Plaintiffs had their wages cut by 7.5% with no change in work duties or hours. (*Id*. ¶ 63).

Plaintiffs assert they were, at times, given the option for additional on-demand work for a negotiable price, with this pay often missing from their pay statements. (*Id*. ¶ 64).

Plaintiffs further assert they were required to undergo unpaid training for several days prior to beginning work as a driver and anytime they changed routes. Plaintiffs also participated in occasional unpaid (or nominally paid) trainings on weekends. (*Id*. ¶ 65).

Plaintiff further allege they were not permitted to take time off, including when sick and, if they did, they were not paid for the time. When Plaintiffs took unauthorized time off, they were often threatened with termination. (*Id*. ¶ 66).

The company name "IntelliQuick" appears on Plaintiffs' pay logs and work uniforms. (*Id*. ¶ 68).

IntelliQuick does not set Plaintiffs' work schedules. Instead, it gives Plaintiffs a deadline for when they must have a truck, or packages delivered to a customer. It is then

the Plaintiffs' responsibility to ensure that the truck or packages are delivered on time. Frequently, these deadlines required Plaintiffs to drive more hours per day than is legal pursuant to 49 C.F.R. § 395.3, which permits property-carrying drivers to drive only 11 hours during 14 consecutive-hour periods, which must follow a break of at least 10 hours. (*Id.* ¶ 69).

Defendants have failed to pay minimum wage to Plaintiffs in accordance with 29. U.S.C. § 206 and A.R.S. § 23-364. IntelliQuick's paycheck deductions, along with its failure to fully reimburse Plaintiffs for their work-related expenses has caused the gross pay of Plaintiffs to fall below the minimum wage. (*Id.* ¶70).

Defendants' counsel were electronically served with the First Amended Complaint when it was filed on July 26, 2024. (*See*, Notice of Electronic Filing dated July 26, 2024 at 4:01 PM attaching Doc. 41).

Defendants' Answer to the First Amended Complaint was filed August 23, 2024. (Doc. 45).

A Case Management Conference was held on September 13, 2024 (Doc. 53) and a Case Management Order was filed on September 16, 2024. (Doc. 54).

Defense counsel filed a Motion to Withdraw as Counsel on February 11, 2025, stating that Defendants had not cooperated with defense counsel's firm in discovery, had not communicated as needed to enable counsel to manage the case adequately and had not met their financial obligations regarding the matter. (Doc. 67).

On April 4, 2025, the Court granted defense counsel's Motion to Withdraw and ordered Defendants IntelliQuick Delivery, Inc., Majik Leasing, LLC, and Majik Enterprises I, Inc., to retain a lawyer and file a Notice of Appearance on or before May 6, 2025. Defendants Spizzirri, Maring, Moore and De La Cruz were also ordered that they each had until May 5, 2025 to either retain counsel or file a Notice to the Court that they intended to proceed pro per. (Doc. 76).

A Joint Motion to Dismiss the Maring Defendants was granted on May 13, 2025. (Doc. 83).

On June 26, 2025, the Court ordered striking the Answer of Defendants for failing to comply with the Court's orders and directed the Clerk of Court to enter defaults. (Doc. 92). Default was entered as to Defendants. (Doc. 100).

On October 17, 2025, Plaintiffs filed the pending Motion for Default Judgment (Doc. 103). Plaintiffs request the Court enter judgment in Plaintiffs' favor for a total of $1,040,263.15 plus $746,218.07 for attorneys' fees, costs, and expenses; for post-judgment interest at the rate of 3.65% per annum on the entire award from the date judgment is entered until paid in full; and, prejudgment interest on their state law claims.

## I. Discussion

### a. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has personal jurisdiction over Defendants because they regularly transact business in and have significant and continuous contact with Arizona.

Here, Plaintiffs bring this action, in-part, pursuant to a federal statute, the FLSA. Therefore, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court further has supplemental jurisdiction over Plaintiffs' related state law claims brought under the AMWA. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). With regard to personal jurisdiction, the First Amended Complaint alleges that Defendants reside in Maricopa County, Arizona, and the principal place of business for Defendants is in Maricopa County. The Court thus has personal jurisdiction over Defendants.

### b. Entry of Default Judgment

#### i. Rule 55 of the Federal Rules of Civil Procedure

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Once a party's default has been entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (considering lack of merit in plaintiff's substantive claims, the court did not abuse its discretion in declining to enter a default judgment).

#### ii. The Eitel Factors

When deciding whether to grant default judgment, the Court considers the following "*Eitel*" factors: "(1) the possibility of prejudice to the plaintiff[;] (2) the merits of the plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). As detailed below, the Court finds that the factors weigh in favor of granting Plaintiffs' Motion for Default Judgment against Defendants.

#### 1. Possible Prejudice to Plaintiffs

The first *Eitel* factor weighs in favor of granting Plaintiffs' Motion. Defendants IntelliQuick Delivery, Inc., IntelliServe, LLC, Majik Leasing, LLC, and Majik Enterprises, I, Inc., have failed to comply with the Court's orders by not securing a licensed attorney. (Doc. 88). Defendants Spizzirri, Moore and De La Cruz also failed to either retain counsel or proceed pro per. Defendants were warned if they failed to comply with the Court's Orders, their Answer would be stricken and defaults entered. (*Id.*). The Court ordered

striking the Answer of Defendants and directed the Clerk of Court to enter defaults. (Doc. 92) Defaults were entered. (Doc. 100). Prejudice exists where, absent entry of default judgment, the Plaintiff would lose the right to a judicial resolution of its claims and would be without other recourse of recovery. *See generally Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388,392 (C.D. Cal. 2005). In view of Defendants' default, Plaintiffs have no alternative means by which to resolve their claims. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, Plaintiffs will be prejudiced if a default judgment is not entered.

### 2. Merits of Plaintiffs' Claims and the Sufficiency of the Complaint

Considering the relationship between the second and third *Eitel* factors, the Court considers the merits of Plaintiffs' substantive claims and the sufficiency of the Complaint together. The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citation omitted). Plaintiffs have set forth clear allegations that they were employed by Defendants as defined under A.R.S. § 23-362(A), and Defendants were employers as defined under A.R.S. § 23-362(B). (Doc. 41 ¶¶10, 22, 28, 31, 37, 42; Doc. 103, pp. 13-14). Defendants paid Plaintiffs less than the minimum wage. (*Id*. ¶70; *Id*., p. 14). Defendants acted willfully to evade the FLSA, the AMWA and the Fair Wages and Healthy Families Act ("the Act"). (*Id*. ¶¶ 71-72; *Id*.) The Court takes these well-plead factual allegations in the Complaint as true, as it must. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Accordingly, these factors weigh in favor of the entry of default judgment.

### 3. Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc*., 238 F. Supp. 2d at 1177. This factor weighs in favor of entering default judgment. Plaintiffs have satisfactorily proven up their damages in this matter by the Declarations attached to

Plaintiffs' Motion for Default Damages (Doc. 103-1, pp. 1-8; 103-2, pp. 1-5; 103-3, pp. 1-5; 103-4, pp. 1-5; 103-5, pp. 1-5; 103-6, pp. 1-5; and all supporting attachments). Plaintiffs declare that they estimate they are owed a total of $1,040,263.15 in unpaid minimum federal and state wages, fully liquidated, exclusive of attorneys' fees and costs. (*Id.*) (It is Defendants' obligation to keep accurate hours of its employees' work. In the absence of an appearance by Defendants, the Court will accept the Plaintiffs' best estimate as to the hours they worked in particular pay periods.) Each Plaintiff's unpaid wages are broken down as follows:

- Plaintiff William Forrest: $26,687.41;
- Plaintiff Wendy Smith: $431,441.04
- Plaintiff Michelle Martinez: $184,346.11
- Plaintiff Jodi Miller: $356,192.16
- Plaintiff Kenneth Turner: $41,596.43.

### 4. The Possibility of Dispute Concerning Material Facts

There is no dispute concerning the material facts because the factual allegations of Plaintiffs' Amended Complaint are taken as true at this default stage. *Marcelos v. Dominguez*, No. 08-0056, 2009 WL 113383, at *4 (N.D. Cal. Jan. 16, 2009). The fifth *Eitel* factor weighs in favor of default.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor considers whether the default was due to excusable neglect. There is no evidence that Defendants' failure to appear or otherwise defend was the result of excusable neglect. Plaintiffs have diligently prosecuted this matter since its inception, while Defendants, who received proper service in this case, have failed to comply with the Court's Orders and otherwise failed to defend this action. The Ninth Circuit has said "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

1 Thus, the sixth *Eitel* factor weighs in favor of default judgment. .

### 6. Policy Disfavoring Default Judgment

Under the seventh and final *Eitel* factor, the Court considers the policy that, whenever possible, cases should be tried on the merits. *Eitel,* 782 F.2d at 1472. The existence of Rule 55(b), however, indicates that the preference for resolving cases on the merits is not absolute. *PepsiCo, Inc*., 238 F. Supp. 2d. at 1177. Because Defendants have failed to comply with the Court's orders and otherwise failed to defend this action, deciding this case on the merits is "impractical," if not impossible. *Id*. Thus, the seventh *Eitel* factor does not preclude the entry of default judgment. On balance, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendants.

### c. Damages

In contrast to the other allegations in the Amended Complaint, allegations pertaining to damages are not taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). As a result, "Plaintiff is required to prove all damages sought in the complaint." *Philip Morris USA Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003). "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innovation Corp. v. KTY Int'l Mktg*., 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011); Fed. R. Civ. P. 54(c). "In determining damages, a court can rely on the declarations submitted by the plaintiff[.]" *Philip Morris USA*, 219 F.R.D. at 498.

Here, the damages Plaintiffs seek in the Motion do not differ in kind from what was initially demanded in the Amended Complaint.

The issue of damages is support by Plaintiffs' Declarations (Doc. 103-1, pp. 1-8; 103-2, pp. 1-5; 103-3, pp. 1-5;  103-4, pp. 1-5; 103-5, pp. 1-5; 103-6, pp. 1-5; and all supporting attachments). *See Doe v. United States*, 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 498 (C.D. Cal 2003)).

### 1. Plaintiff William Forrest

Plaintiff Forrest declares he was an employee of Defendants between April 2012 and June 2020, working, on average, 57.5 hours per week. (Doc. 41. ¶ 46; Doc. 103-2 ¶ 5). Forrest paid out-of-pocket daily to gas up the vehicle he leased from Defendants; these business expenses were not reimbursed to him. (Doc. 41, ¶¶ 45, 47; Doc. 103-2, ¶¶ 6, 7). In addition, Defendants deducted $236.81 in fees per week for work expenses such as the car lease, uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing. (*Id.* ¶ 62; *Id.* ¶ 7).

Forrest was paid a fixed daily rate, regardless of the hours worked of $213.50 until his wages were reduced by 7.5% to $194.25 in May 2020. (Doc. 41, ¶ 63; Doc. 103-2 ¶ 8).

Forrest's damage calculations are included Attachment 1 to the Sum Certain Declaration of Morgan L. Bigelow. (Doc. 103-1, p. 10).

Forrest should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020. Forrest also should have been paid an additional half of his regular rate, or at least half the minimum wage rate, for each hour after the first 40 in each work week. (Doc. 103, p. 17).

Under the AMWA, Forrest is owed $109.25 in minimum wages. Forrest is entitled to treble damages on his minimum wage claim, raising the amount owed to him to $327.75. (Doc. 103, p. 17; Doc. 103-1, p. 10).

During the relevant time frame, Forrest worked, on average, 17.5 hours of overtime per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207, Forrest is entitled to receive compensation at a rate of one and one-half times the regular rate for all hours worked in excess of forty hours in any work week. Defendants' violation of the FLSA's Overtime Provision, 29 U.S.C. § 207(a)(1), *et seq.*, Forrest is owed overtime wages equaling $10,969.43. Forrest is entitled to double damages, raising his overtime damages to $21,938.86. (Doc. 103, p. 17; Doc. 103-1, p. 10).

Under the Earned Paid Sick Time Act, A.R.S. § 23-371, *et seq.*, Forrest is owed 40

1  hours of accrued PST per year for 2018, 2019 and 2020 which is equivalent to $1,473.60.
2  Pursuant to § 23-364(G), this amount should be trebled to $4,420.80.  (See Doc. 103-1 p.
3  10).

### 2. Plaintiff Wendy Smith

Plaintiff Smith was employed by Defendants from about October 2012 through July 2016 and again from about September 2018 to September 2020 as a route driver. (Doc. 41 ¶ 51; Doc. 103, p. 18).  Smith worked 14-to-16-hour days, 5 days per week, and 7 hours on Saturday.  (Doc. 41, ¶ 53; Doc. 103, p. 18; Doc. 103-1, pp. 12-14; 103-3,¶ 5).  Smith used her personal vehicle and paid out-of-pocket to maintain and gas up her vehicle, averaging 600 miles per day.  These business expenses were not reimbursed to her.  (Doc. 41, ¶ 54; Doc. 103, p. 18).  Defendants deducted $35.81 in fees per week for work expenses such as uniform laundering, secondary car insurance, required scanner rental and software, and paycheck processing.  (Doc. 41 ¶ 62; 103, p. 18; 103-3 ¶ 5).  Smith was compensated a daily rate of $265 until her wages were reduced by 7.5% to $245 per day in May 2020. (Doc. 41 ¶ 63; Doc. 103, p. 18; 103-3 ¶8).

Smith's damage calculations are included in Attachment 2 of the Sum Certain Declaraion of Morgan L. Bieglow.  (Doc. 103-1, pp. 11-14).

Smith should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020.  Smith also should have been paid an additional half of her regular rate or at least half the minimum wage rate for each hour after the first 40 in each work week.  (Doc. 103, p. 18).

Under the AMWA, Smith is owed $129,027.38 in minimum wages.  Plaintiff is entitled to treble damages on her minimum wage claim, raising the amount owed to her to $387,082.14.  (Doc. 103, p. 18; Doc. 103-1, pp. 12- 14; Doc. 103-3).

During the relevant time frame, Smith worked, on average, 35 hours olf overtime per week and was not paid for these compensable hours.  Under the FLSA, 29 U.S.C. § 207, Smith is entitled to receive compensation at a rate of one and one-half times the regular rate for all hours worked for Defendants in excess of forty hours in any work week.  (Doc.

103, p. 19).

Under the FLSA's Overtime Provision, 29 U.S.C. § 207, Smith is owed overtime wages equaling $20,405.70. Smith is entitled to double damages, raising her overtime damages to $40,811.40 (Doc. 103, p. 19; Doc. 103-1, ¶ 9; 103-3 ¶ 12).

Under the Earned Paid Sick Time Act, A.R.S. § 23-371, *et seq.*, Smith is owed 25 hours of accrued PST per year for 2018, and 40 hours of accrued PST per year for 2019 and 2010 which is equivalent to $1,182.50. Pursuant to § 23-364(G), this amount should be trebled to $3,547.70. (Doc. 103, p. 19; Doc. 103-1, pp. 11-14).

### 3. Plaintiff Jodi Miller

Plaintiff Miller was employed by Defendants from about November 2018 through September 25, 2020, as a route driver. (Doc. 41 ¶ 48; Doc. 103, p. 19). Between November 2018 and May 2020, Miller worked Monday through Friday for approximately 14 hours per day. (*Id.* ¶¶ 48-49; *Id.* p. 19). She also worked a weekly Saturday route for approximately 7 hours and occasionally covered others' shifts on Sundays. (*Id.* ¶ 49; *Id* p. 19; Doc. 103-4, ¶ 5). She paid out of pocket to maintain and gas up her vehicle and averaged 2,600 miles per week. These business expenses were not reimbursed to her. (*Id.* ¶ 49; *Id* p. 19; Doc. 103-4, ¶ 5).

Miller was paid $243 per day for her weekday routes and $100 for her Saturday route. (Doc. 41 ¶ 63; Doc. 103, p. 19; Doc. 103-4 ¶ 9). In May 2020, her daily rate was reduced by 7.5%. (Doc. 41 ¶ 63; 103, p. 20). Beginning in June 2020, Miller stopped working her Saturday route and her Idexx route, lowering her average weekly hours from 77 hours per week to 70 hours per week. (Doc. 103, p. 20; Doc. 103-4, ¶ 6). Her new daily rate was approximately $206 per day. (Doc. 103, p. 20; Doc. 103-4 ¶ 9). In addition, Defendants deducted $36.80 in fees per week for work expenses such as uniform laundering, secondary car insurance, required scanner rental and software and paycheck processing. (Doc. 41 ¶ 62; Doc. 103-4 ¶ 8). Miller's damage calculations are included in Attachment 4 to the Sum Certain Declaration of Morgan L. Bieglow. (Doc. 103-1, pp. 28-30.)

1    Miller should have been paid at least the minimum wage for all hours worked at the
2    rate of at least $10.50/hr in 2018, $11.00/hr in 2019, and $12.00/hr in 2020. Miller also
3    should have been paid an additional half of her regular rate, or at least half the minimum
4    wage rate, for each hour after the first 40 in each work week. (Doc. 103, p. 20).

5    Under the AMWA, Miller is owed $105,098.06 in minimum wages. Miller is
6    entitled to treble damages on her minimum wage claim, raising the amount owed to her to
7    $315,294.18. (Doc. 103, p. 20; Doc. 103-1, pp. 28-30).

8    During the relevant time frame, Miller worked, on average, 37 hours of overtime
9    per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. §
10   207, Miller is entitled to receive compensation at a rate of one and one-half times the
11   regular rate for all hours worked in excess of 40 hours in any work week. (Doc. 103, p.
12   20).

13   Under the FLSA Overtime Provision, 29 U.SW.C. § 207(a)(1), *et seq.*, Miller is
14   owed overtime wages equaling $18,942.99. Miller is entitled to double damages, raising
15   her overtime damages to $37,885.98. (Doc. 103, p. 21; Doc. 103-1, pp. 28-30).

16   Under the Earned Paid Sick Time Act, A.R.S. § 23-371, *et seq*, Miller is owed 8
17   hour of accrued PST in 2018 and 40 hours of accrued PST per year for 2019 and 2020,
18   which is equivalent to $1,004.00. Pursuant to § 23-365(G), this amount should be trebled
19   to $3,012.00. (Doc. 103, p. 21; Doc. 103-1, pp. 28-30)**.**

### 4. Plaintiff Michelle Martinez

21   Plaintiff Martinez was employed by Defendants from about June 2014 through
22   January 10, 2023, as a route driver. (Doc. 103, p. 21; Doc. 41 ¶55; Doc. 103-4, ¶ 3).
23   Martinez worked Monday through Friday approximately 50 hours per week. (Doc. 103, p.
24   21; Doc. 41. ¶ 56). She paid out of pocket to maintain and gas up her vehicle on which
25   she put an average of 750 miles per week between July 2018 and July 2021 and an average
26   of 1,050 miles per week thereafter. These business expenses were not reimbursed to her.
27   (Doc. 103, p. 21; Doc. 41 ¶ 57; Doc. 103-4 ¶4).

28   Defendants deducted $36.81 in fees per week for work expenses such as uniform

laundering, secondary car insurance, required scanner rental and software, and paycheck processing. (Doc. 103, p. 21; Doc. 41 ¶62; Doc. 103-4 ¶5). Martinez was paid $183 per day for her weekday route. (Doc. 103, p. 21; Doc. 41 ¶63). In May 2020, her daily rate was reduced by 7.5% to approximately $169 per day. (Doc. 103, p.21; Doc. 41. ¶63; Doc. 103-4 ¶7). Martinez's damage calculations are included in Attachment 3 to the Sum Certain Declaration of Morgan L. Bigelow. (Doc. 103-1, pp. 16-26).

Martinez should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, $12.00/hr in 2020, $12.15/hr in 2021, $12.80/hr in 2022 and $13.85 hr in 2023. Martinez also should have been paid an additional half of her regular rate, or at least half the minimum wage rate for each hour after the first 40 in each work week. (Doc. 103, p. 22).

Under the AMWA, Martinez is owed $48,859.24 in minimum wages. Martinez is entitled to treble damages on her minimum wage claim, raising the amount owed to her to $146,577.73. (Doc. 103, p. 22; Doc. 103-1, pp. 16-26).

During the relevant time frame, Martinez worked 8.75 hours of overtime per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207, Martinez is entitled to received compensation at the rate of one and one-half times the regular rate for all hours worked in excess of 40 hours in any work week.

Under the FLSA's Overtime Provision, 29 U.SW.C. § 207(a)(1), *et seq.*, Martinez is owed overtime wages equaling $15,325.08. Martinez is entitled to double damages, raising her overtime damages to $30,650.16. (Doc. 103, p. 22; Doc. 103-1, pp. 16-26).

Under the Earned Paid Sick Time Act, A.R.S. § 23-371, *et seq.*, Martinez is owed 40 hours of accrued PST per year from 2018 to 2022 and is owed 2.5 hours of accrued PST for 2023, which is equivalent to $2,732.74. This amount should be trebled to $7,118.22. (Doc. 103, pp. 22-23; Doc. 103-1, pp. 16-26).

### 5. Plaintiff Kenneth Turner

Kenneth Turner was employed by Defendant from about March 2014 through February 11, 2023, as a freight/utility driver. (Doc. 41 ¶ 58; Doc. 103, p. 23; Doc. 103-6 ¶

3). Turner worked anywhere from 8 to 11 hours per day, 5 and sometimes 6 days per week. (Doc. 103, p. 23; Doc. 41, ¶ 60). Turner was paid $150 per day until May 2020 when his daily rate was reduced by 7.5% to approximately $138.75 per day. (Doc. 103, p. 23; Doc. 41 ¶63; Doc. 103-6, ¶ 6). Defendants deducted $36.81 in fees per week for work expenses such as uniform laundering, secondary car insurance, required scanner rental and software and paycheck processing. (Doc. 103, p. 23; Doc. 41 ¶ 62; Doc. 103-6 ¶ 10). Turner's damage calculations are included in Attachment 5 to the Sum Certain Declaration of Morgan L. Bigelow, (Doc. 103, p. 23; Doc. 103-1, pp. 32-57).

Turner should have been paid at least the minimum wage for all hours worked at the rate of at least $10.50/hr in 2018, $11.00/hr in 2019, $12.00/hr in 2020, $12.15/hr in 2021, $12.80/hr in 2022 and $13.85/hr in 2023. Turner also should have been paid an additional half of his regular rate or at least half the minimum wage rate, for each hour after the first 40 in each work week. (Doc. 103, p. 23).

Under the AMWA, Turner is owed $845.20 in minimum wages. Turner is entitled to treble damages on his minimum wage claim, raising the amount owed to him to $2,535.60. (Doc. 103, p.23; Doc. 103-1, pp. 32-57).

During the relevant time frame, Turner worked, on average, 10 hours of overtime per week and was not paid for these compensable hours. Under the FLSA, 29 U.S.C. § 207, Turner is entitled to receive compensation at a rate of one and one-half times the regular rate for all hours worked for Defendants in excess of 40 hours in any work week. (Doc. 103, pp. 23-24).

Under the FLSA's Overtime Provision, 29 U.S.C. § 207(a)(1), *et seq.*, Turner is owed overtime wages equaling $14,027.71. Turner is entitled to double damages, raising his overtime damages to $28,055.42. (Doc. 103, p. 24; Doc. 103-1, pp.32-57).

Under the Earned Paid Sick Time Act, A.R.S. § 23-371, *et seq.*, Turner is owed 40 hours of accrued PST per year from 2018 to 2022 and is owed 17 hours for 2023, which is equivalent to $3,668.47. This amount should be trebled to $11,005.41. (Doc. 103, p. 24; Doc. 103-1, pp. 32-57).

## II. Attorneys Fees and Costs

Plaintiffs' Amended Complaint requested attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G). Plaintiffs are the "successful party" and the "prevailing plaintiffs' for purposes of these statutes, and they are therefore entitled to their reasonable attorneys' fees and costs. (Doc. 41, ¶¶ 121, 122).

The Court is granting default judgment against Defendants and the allegations in Plaintiffs' Amended Complaint are deemed admitted against Defendants.

Plaintiffs seek $746,218.07 for attorneys fees (of which $235,193.10 is attorneys' fees to Lubin, Enoch & Bustamante, P.C,; $500,000 is attorneys' fees to Haynes Boone; $3,709.53 is computerized legal charges recoverable as fees), and $7,315.33 in costs and expenses and post judgment interest. (*See* Declarations of Nichalas J. Enoch and of Daniel L. Geyser and all supporting documents at Doc. 103-7, pp. 1-138; Doc. 103-8, pp. 1-37). For the reasons stated herein, Plaintiffs' requests for attorneys' fees and costs will be granted.

Courts regularly award the reasonable fees incurred by a plaintiff. "[A]ttorney's fees are to be awarded to the prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 534 (1994). "Courts consider the following non-exhaustive list of factors when determining whether to grant attorneys' fees: '(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.'" *Id*.

Accordingly,

The Court finds that Plaintiffs prevailed and are successful as the Court will enter judgment in Plaintiffs' favor. Moreover, the Court finds that Plaintiffs' request for fees and costs is not frivolous or made for any improper purpose and that the statute entitles Plaintiffs to an award of attorneys' fees here. The Court finds that Plaintiffs' hours billed in this matter are reasonable under the circumstances and further finds that the hourly rate charged by counsel, as set forth in the Declaration of Nicholas J. Enough, Doc. 103-7, ¶28,

are reasonable. Therefore, the Court will grant the request.

The Court is satisfied as to the methodology and justification for calculating damages and will award Plaintiffs' claims for a sum certain as set forth below.

The Court further finds that Plaintiffs' second claim is for unpaid minimum wages, that such wages should be trebled pursuant to A.R.S. § 23-364(G), and that this action encompasses all violations that occurred, regardless of the date they occurred, as part of a continuing course of conduct by Defendants. A.R.S. § 23-364(H).

The Court further finds that Plaintiffs' third claim is for unpaid overtime wages for all overtime hours they worked, pursuant to 29 U.S.C. § 207. In addition to receiving compensation for their hours at a rate of one and one-half times the regular rate for all hours in excess of 40 hours in any week, Plaintiffs are entitled to liquidated damages, reasonable attorneys' fees and cost of action pursuant to 29 U.S.C. § 216(b).

The Court further finds that Plaintiffs' fourth claim is for unpaid sick time, pursuant to A.R.S. § 23-371, et seq. In addition to receiving compensation for their accrued paid sick time each year at their regular rate or, at least, the minimum wage rate, Plaintiffs are entitled to liquidated damages, pursuant to A.R.S. § 23-364(G).

The Court further finds that Plaintiffs are entitled to prejudgment interest on the state law minimum wage and paid sick leave claims at the rate of 8.25% per annum, from the last date of each Plaintiff's employment until entry of Judgment.

Finally, the Court finds that Plaintiffs are entitled to post-judgment interest on unpaid wages and to attorneys' fees and costs at the federal legal rate, that the requested fees are reasonable, and that Plaintiffs are otherwise entitled to the relief requested.

Based on the forgoing findings, and good cause appearing,

**IT IS ORDERED** that Plaintiffs' Motion for Default Judgment (Doc. 103) is granted as provided in this Order.

**IT IS ORDERED** that Plaintiffs be awarded Judgment against Defendants in the following apportioned amounts plus prejudgment interest on the minimum Wage and Paid Sick Time principal amounts at the rate of 8.25% per annum from the last date of their

employment until entry of Judgment, plus post-judgment interest at a rate of 3.49% from entry of Judgment until paid:

| Plaintiff | Minimum wages plus damages | Overtime wages plus damages | Paid sick time plus damages | Total | Last Date of Employment |
|---|---|---|---|---|---|
| **William Forrest** | $109.25 x 3= $327.75 | $10,969.43 x 2= $21,938.86 | $1,473.60 x 3= $4,420.80 | **$26,687.41** | June 15, 2020 |
| **Wendy Smith** | $129,027.38 x 3= $387,082.14 | $20,405.70 x 2= $40,811.40 | $1,182.50 x 3= $3,547.50 | **$431,441.04** | September 21, 2020 |
| **Jodi Miller** | $105,098.06 x 3= $315,294.18 | $18,942.99 x 2= $37,885.98 | $1,004.00 x 3= $3,012.00 | **$356,192.16** | September 25, 2020 |
| **Michelle Martinez** | $48,859.24 x 3= $146,577.72 | $15,325.08 x 2= $30,650.16 | $2,372.74 x 3= $7,118.22 | **$184,346.11** | January 10, 2023 |
| **Kenneth Turner** | $845.20 x 3= $2,535.60 | $14,027.71 x 2= $28,055.42 | $3,668.47 x 3= $11,005.41 | **$41,596.43** | February 11, 2023 |
|  |  |  | Total | **$1,040,263.15** |  |

**IT IS FURTHER ORDERED** that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Judgment be entered in favor of Plaintiffs and against Defendants Intelliserve LLC, Intelliquick Delivery Incorporated, Majik Leasing LLC, Majik Enterprises I Incorporated, Keith Spizzirri, Miriam Spizzirri, Cynthia Moore and Jason Moore, and John De La Cruz and Jane Doe De La Cruz (Debra De La Cruz), individually and collectively, in the amount of **$1,040,263.15**, as reflected above

**IT IS FURTHER ORDERED** awarding Plaintiffs **$738,902.63** for their reasonable attorneys' fees and **$7,315.44** in costs and expenses and shall bear interest at the federal rate from the date of Judgment until paid.

/ / /

/ / /

/ / /

1       **IT IS FURTHER ORDERED** that this judgment is, and shall be, entered as a final judgment pursuant to Fed. R. Civ. P. 54(b) as to all Defendants as set forth above.

Dated this 29th day of December, 2025.

_____
G. Murray Snow
Senior United States District Judge